## THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS—DALLAS DIVISION

| | | |
|---|---|---|
| **VIBRADERM, INC.,** | § | **CIVIL ACTION NO.** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **MULTIDERM, L.L.C. SUCCESSOR** | § | |
| **TO MULTIDERM, INC., TIMOTHY G.** | § | |
| **CARROLL, INDIVIDUALLY AND AS** | § | |
| **AGENT FOR MULTIDERM, INC.** | § | |
| **AND MULTIDERM, L.L.C.; JAMES** | § | |
| **JANSING, INDIVIDUALLY AND AS** | § | |
| **AGENT FOR MULTIDERM, L.L.C.** | § | |
| **DOES 1, AND 2 AS AGENTS FOR** | § | |
| **MULTIDERM, L.L.C.; AND DOES "X"** | § | |
| **INDIVIDUALLY AND AS AGENTS** | § | |
| **FOR MULTIDERM, L.L.C.** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
AUG - 1 2007
CLERK, U.S. DISTRICT COURT
By_____
Deputy

**3-07CV1331-M**

## DEFENDANT'S NOTICE OF REMOVAL

Defendant Multiderm LLC files this Notice of Removal under 28 U.S.C. § 1446(a).

## I. INTRODUCTION

1.  Plaintiff is Vibraderm Inc. ("Vibraderm"); Defendants are Multiderm, LLC ("Multiderm"), Timothy G. Carroll, James Jansing, and fictitious defendants ("Does") (collectively "Defendants").

2.  On July 19, 2007, Vibraderm filed suit against Defendants for damages and a temporary restraining order in the 160th Judicial District Court of Dallas County, Texas, styled *Vibraderm, Inc., v. Multiderm, L.L.C. successor to Multiderm, L.L.C., Timothy G. Carroll, Individually and as agent for Multiderm, Inc. and Multiderm, L.L.C.; James Jansing, Indivdually and as agent for Multiderm, L.L.C., Does 1, and 2 as agents for Multiderm*

---

*L.L.C.; and Does "X" Individually and as agents for Multiderm, L.L.C.*, Cause No. 07-07319-H. A jury trial has not been requested.

3. Multiderm accepted service of the petition on July 26, 2007. Multiderm filed this Notice of Removal within the 30-day time period required by 28 U.S.C. § 1446(b).

4. Venue is proper in this district under 28 U.S.C. § 1441(a) because the state court where the action has been pending is located in this district.

## II.  PARTIES

5. Plaintiff, Vibraderm, Inc., is a Texas corporation with its principal place of business at 2100 N. Highway 360, Suite 1502, Grand Prairie, Texas 75050. Plaintiff is a citizen of Texas for purposes of diversity of jurisdiction.

6. Defendant Multiderm, LLC, is a foreign company organized under the laws of the State of Ohio, with its principal place of business in Ohio. Multiderm is a citizen of Ohio for purposes of diversity of jurisdiction.

7. Defendant Timothy G. Carroll is an individual who resides in Ohio. Mr. Carroll may be served at 3116-C West Montgomery Road, Suite 256, Maineville, Ohio. Mr. Carroll is a citizen of Ohio for purposes of diversity of jurisdiction.

8. Defendant James Jansing is an individual who resides at 6755 Towering Ridge Way, Cincinnati, Ohio 45247. Mr. Jansing is a citizen of Ohio for purposes of diversity of jurisdiction.

9. Defendants Does A, B, and X are fictitious entities whose citizenship are not considered for purposes of diversity of jurisdiction. 28 U.S.C. §1441(a).

## III.  BASIS FOR REMOVAL

10. Removal is proper in this case under 28 U.S.C. §§ 1441(a) and 1332(a) because there is complete diversity between the parties and the amount in controversy exceeds $75,000, excluding interest, costs, and attorney's fees. *See* attached affidavit of Timothy G. Carroll.

11. All other defendants who have been served with summons consent to removal of this case to federal court.

## IV.  CONCLUSION

12. All pleadings, process, orders, and other filings in the state court action are attached to this notice as required by 28 U.S.C. § 1446(a).

13. Multiderm will promptly file a copy of this Notice of Removal with the clerk of the state court where the action is pending.

14. There is complete diversity of citizenship between the Plaintiff and Defendants and the amount in controversy exceeds $75,000.  For these reasons, Defendant asks the Court to remove the action to federal court.

15. Therefore, Multiderm hereby provides notice that this action is duly removed.

Respectfully submitted,

ZELLE, HOFMANN, VOELBEL, MASON & GETTE, L.L.P.

By  *R. G. Urquhart*

Richard G. Urquhart
State Bar No. 00792887
Brent W. Bull
State Bar No. 24040600

1201 Main Street, Suite 3000
Dallas, Texas 75202-3975
Telephone:    (214) 742-3000
Facsimile:    (214) 760-8994

**ATTORNEYS FOR MULTIDERM, L.L.C.
AND TIMOTHY G. CARROLL**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing

has been forwarded per the Federal Rules of Civil Procedure on this __1st__ day of August 2007,

to:

David J. Moraine
Marchand & Moraine, L.L.C.
One Hundred South Woodrow Lane, Suite 300
Denton, Texas 76205
Facsimile (940) 384-1821

Gary Lee Hach
The Hach Law Offices
312 West Northwest Highway, Suite B
Grapevine, Texas 76051
Facsimile (817) 421-3680

_R. G. Urquhart_
Richard G. Urquhart



**THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS—DALLAS DIVISION**

| | | |
|---|---|---|
| VIBRADERM, INC., | § | CIVIL ACTION NO. |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| Y. | § | |
| | § | |
| MULTIDERM, L.L.C.; | § | |
| TIMOTHY C. CARROLL; JAMES | § | |
| JANSING; and DOES A, B, and X, | § | |
| | § | |
| **Defendants.** | § | |

## AFFIDAVIT OF TIMOTHY CARROLL

STATE OF  Ohio          §

COUNTY OF  Warren          §

BEFORE ME, the undersigned authority, personally appeared Timothy Carroll, who, after being duly sworn, stated under oath that:

1) He has personal knowledge of and is competent to testify to the matters stated herein.

2) At all relevant times his title has been president of Multiderm, L.L.C., and he is authorized to act on behalf of Defendant Multiderm, L.L.C..

3) Multiderm, L.L.C. is an Ohio limited liability company that sells a skin exfoliation and infusion machine.

4) Vibraderm, Inc. filed a lawsuit in district court for the state of Texas against Multiderm, L.L.C., Timothy Carroll, and James Jansing asserting, among other claims, misappropriation of trade secrets, breach of fiduciary duty, and theft of trade secrets. Vibraderm seeks damages in excess of $100,000 and a temporary restraining order and injunction that would prohibit Multiderm from spending the profits from sales of its machine and effectively prohibit Multiderm from selling its equipment.

5) Based on information submitted by Vibraderm and affiant's personal knowledge of the facts alleged by Vibraderm, the damages Vibraderm seeks to recover, and the amount in controversy, exceed $75,000.

**AFFIDAVIT OF TIMOTHY CARROLL**

Further, Affiant sayeth not.

Timothy Carroll

SUBSCRIBED AND SWORN TO BEFORE ME on this 1st day of August, 2007 to certify which witness my hand and seal of office.

Nancy Chin

Notary Public
In and for the State of Ohio

**NANCY CHIN**
Notary Public, State of Ohio
My Commission Expires
February 15, 2011

My Commission Expires:

Feb 15, 2011

**AFFIDAVIT OF TIMOTHY CARROLL**

**PAGE 2**

2064736v1



# CASE SUMMARY
## CASE NO. DC-07-07319

| | | |
|---|---|---|
| **VIBRADERM INC et al**<br>vs.<br>**MULTIDERM LLC et al** | §<br>§<br>§<br>§<br>§ | Location: **160th District Court**<br>Judicial<br>Officer: **JORDAN, JIM**<br>Filed on: **07/19/2007** |

---

### CASE INFORMATION

Case Type: **COMMERCIAL DISPUTE**
Sub Type: **ANTITRUST/UNFAIR COMPETITION**

---

### PARTY INFORMATION

| | | Lead Attorneys |
|---|---|---|
| **PLAINTIFF** | **GIBB, GRADY** | |
| | **VIBRADERM INC** | |
| | | **MORAINE, DAVID J**   214-378-1043 |
| **DEFENDANT** | **CARROLL, TIMOTHY G** | |
| | **JANSING, JAMES** | |
| | **MULTIDERM LLC** | |

---

| DATE | EVENTS & ORDERS OF THE COURT | INDEX |
|---|---|---|
| 07/19/2007 | ORIGINAL PETITION (OCA) | |
| 07/19/2007 | ISSUE CITATION | |
| 07/19/2007 | ISSUE TRO AND NOTICE | |
| 07/19/2007 | MISCELLANOUS EVENT<br>    PLAINTIFF VIBRADERM INC<br>    *Certificate of Compliance* | |
| 07/19/2007 | ORDER - MEDIATION | *Vol./Book 403H,<br>Page279, 1<br>pages* |
| 07/19/2007 | ORDER - TEMPORARY RESTRAINING ORDER | *Vol./Book 403H,<br>Page280, 4<br>pages* |
| 07/20/2007 | BOND FILED | |
| 07/20/2007 | **CITATION**<br>    MULTIDERM LLC            unserved<br>    CARROLL, TIMOTHY G       unserved<br>    JANSING, JAMES           unserved<br>    *3 - ATTY* | |
| 07/20/2007 | **TEMPORARY RESTRAINING ORDER**<br>    MULTIDERM LLC            unserved<br>    CARROLL, TIMOTHY G       unserved<br>    JANSING, JAMES           unserved<br>    *3 TRO - ATTY* | |

*Printed on 08/01/2007 at 10:13 AM*

# CASE SUMMARY
## CASE NO. DC-07-07319

| | |
|---|---|
| 07/20/2007 | **NOTICE** |
| | MULTIDERM LLC                    unserved |
| | CARROLL, TIMOTHY G              unserved |
| | JANSING, JAMES                     unserved |
| | *3 NOT - ATTY* |
| | |
| 07/20/2007 | MISCELLANOUS EVENT |
| | PLAINTIFF VIBRADERM INC |
| | *Amended Certificate of Compliance* |
| | |
| 07/22/2007 | RETURN OF SERVICE |
| | *1 ATTY SUBP ISSUED EXEC 7/21/07 ( GRADY GIBBS) PPS TENDER FEE $ 10.00* |
| | |
| 07/23/2007 | AMENDED PETITION |
| | PLAINTIFF VIBRADERM INC |
| | *1ST* |
| | |
| 07/24/2007 | MOTION - QUASH |
| | PLAINTIFF GIBB, GRADY |
| | *CERT CONF: YES* |
| | |
| 07/25/2007 | RESPONSE |
| | *P/RESP/M/QUASH* |
| | |
| 07/31/2007 | MOTION - DISSOLVE |
| | DEFENDANT CARROLL, TIMOTHY G;  DEFENDANT MULTIDERM LLC |
| | *TRO & RESP REQUEST TEMP INJ* |
| | |
| 07/31/2007 | RETURN OF SERVICE |
| | *1 ATTY SUBP ISSUED EXEC 7/30/07 (GRADY GIBBS) PPS TENDER FEE $10.00* |
| | |
| 08/02/2007 | **Temporary Injunction** (1:00 PM)  (Judicial Officer: JORDAN, JIM) |
| | *PLTF* |
| | |
| 08/10/2007 | **MOTION HEARING** (1:00 PM)  (Judicial Officer: JORDAN, JIM) |
| | Events: 07/25/2007 RESPONSE |
| | *P/RESPONSE/M/QUASH* |

| DATE | FINANCIAL INFORMATION | | |
|---|---|---|---|
| | **PLAINTIFF** VIBRADERM INC | | |
| | Total Charges | | 293.00 |
| | Total Payments and Credits | | 293.00 |
| | **Balance Due as of  8/1/2007** | | **0.00** |
| 07/19/2007 | Charge | PLAINTIFF VIBRADERM INC | 217.00 |
| 07/19/2007 | Charge | PLAINTIFF VIBRADERM INC | 72.00 |
| 07/19/2007 | PAYMENT       Receipt # 40098-2007-DCLK | PLAINTIFF VIBRADERM INC | (293.00) |
| | (CASE FEES) | | |
| 07/20/2007 | Charge | PLAINTIFF VIBRADERM INC | 4.00 |
| 07/24/2007 | Adjustment | PLAINTIFF VIBRADERM INC | 0.00 |

*Printed on 08/01/2007 at 10:13 AM*



CAUSE NUMBER *07-07319*

FILED
2007 JUL 19  PM 3: 4_
GARY FITZSIMMONS
DISTRICT CLERK
DALLAS CO., TEXAS

_____ DEPUTY

| | | |
|---|---|---|
| VIBRADERM, INC. | § | IN THE DISTRICT COURT |
| PLAINTIFF | § | |
| | § | |
| V. | § | |
| | § | |
| MULTIDERM, L.L.C. SUCCESSOR TO | § | |
| MULTIDERM, INC., TIMOTHY G. | § | |
| CARROLL, INDIVIDUALLY AND AS AGENT | § | H-160th JUDICIAL DISTRICT |
| FOR MULTIDERM, INC. AND MULTIDERM, | § | |
| L.L.C.; JAMES JANSING, INDIVIDUALLY | § | |
| AND AS AGENT FOR MULTIDERM, L.L.C. | § | |
| DOES 1, AND 2 AS AGENTS FOR | § | |
| MULTIDERM, L.L.C.; AND DOES "X" | § | |
| INDIVIDUALLY AND AS AGENTS FOR | § | |
| MULTIDERM, L.L.C. | § | |
| DEFENDANTS | § | DALLAS COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION AND
## REQUEST FOR TEMPORARY RESTRAINING ORDER

**TO THE HONORABLE COURT:**

Vibraderm, Inc. the plaintiff, complains of Timothy G. Carroll, Multiderm, L.L.C., James

Lansing, and Does 1, 2, and X, defendants, and for cause of action shows:

### SUMMARY OF INJUNCTIVE RELIEF SOUGHT:

Plaintiff Vibraderm, Inc. seeks injunctive relief prohibiting the further use and
dissemination of Vibraderm's trade secret information, including Vibraderm's confidential
customer and contacts list, marketing plan, research and development information, and
business model; and the disparagement of Vibraderm by and through the Defendants.
The trade secrets were covertly acquired by Defendant Carroll while a director and
fiduciary of Vibraderm.  Carroll stole the information by becoming a director under a
plan of economic espionage, wrongfully smuggling the information from the Vibraderm
corporate offices and starting Vibraderm's sole competitor in the narrow
vibradermabrasion market.   The use of the stolen trade secrets is ongoing and
continuous and causes injury for which there is no adequate remedy at law, including
instant and ongoing solicitation of Vibraderm's customers, and confusion in the
marketplace caused by the Defendants' actions, disparagement of Vibraderm's business
reputation and products, and misuse of Vibraderm's confidential trade secrets.

1.      Selection of Discovery Level

Discovery is to be conducted pursuant to a Level 2 Discovery control plan in accordance with the Texas rules of civil procedure.

2.      Party and Service Instructions

a.      Vibraderm, Inc. (Vibraderm) is the Plaintiff, and is a Texas corporation with its principal place of business in this state, and who appears by and through its attorney, David J. Moraine, Marchand & Moraine, L.L.P., 109 South Woodrow Lane, Suite 300, Denton, Texas 76205.

b.      Timothy G. Carroll (Carroll) is an individual residing in Ohio.  At all times relevant, Carroll was acting as an agent of and vice-principal of  Multiderm, Inc. and Multiderm, L.L.C. its successor in interest, in that he was a corporate officer, was a person to whom the company delegated authority to employ, direct, and discharge servants, was a person engaged in the performance of nondelegable duties of the company, and was a person to whom the company confided the management of the whole or a department or division of the business.  Service may be at 3116-C West Montgomery Road, Suite 256, Maineville, Ohio 45039.

c.      Co-defendant Multiderm, L.L.C. (Multiderm) is the successor in interest to Multiderm, Inc., and is an Ohio limited liability company that may be served by and through its registered agent for service of process CMK Service Corporation, One East Fourth Street, Suite 1400, Cincinnati, Ohio 45202.

d.      Co-defendant James Jansing is an Ohio resident and is the Manager of Multiderm, L.L.C.  At all times relevant, Jansing was acting as an agent of and vice-principal of Multiderm in that he was a corporate officer, was a person to whom the company delegated authority to

Plaintiff's Original Petition
And Application For
Temporary Restraining Order                                                              Page 2

employ, direct, and discharge servants, was a person engaged in the performance of nondelegable duties of the company, and was a person to whom the company confided the management of the whole or a department or division of the business.  Service may be had at the office of Keating, Muething & Klekamp PLL, One East Fourth Street, Suite 1400, Cincinnati, Ohio 45202.

      e.      Co-defendants Does A and B are agents of defendant Multiderm, L.L.C. and at all times relevant herein were acting within the course and scope of their agency.  The identity of such Does will be supplemented following appropriate discovery.

      f.      Co-defendants Does X are persons or entities acquiring any object, material, device, or or any copy thereof, including a writing, recording, drawing, sample, prototype, model, or photograph, or the whole or any part of any scientific or technical instrument, information, design, process, procedure, or improvement that constitutes trade secret property of Vibraderm, and who to a patient or other customer communicated or communicates or transmitted or transmits same or a copy of same, in violation of Vibraderm's rights pursuant to the Texas Theft Liability Act.  The identity of such Does will be supplemented following appropriate discovery.  Such Does may include Midwest Medical, Inc.,  Multiderm's distributors, and physician resellers who acquired the trade secrets of Vibraderm through the actions of the defendants and used, sold or transmitted same in violation of Vibraderm's rights.

3.     Jurisdiction and Venue

      a.      Texas has jurisdiction over the parties to this suit.  Carroll is a non-resident who is subject to long-arm jurisdiction because he contracted by mail or otherwise with a Texas resident and either party was to perform the contract in whole or in part in this state; he committed a tort in whole or in part in this state; and he recruited Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.  Carroll further

purposefully availed himself of the benefits and protections of the judicial system in this state by filing and prosecuting suit against Vibraderm in this state.

b.      Multiderm is a non-resident limited liability company chartered in Ohio, that is subject to long-arm jurisdiction because it committed a tort in whole or in part in this state; and recruited Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

c.      Jansing is a non-resident who on information and belief is subject to long-arm jurisdiction because he aided and abetted the commission of a tort in whole or in part in this state.

d.      The Doe defendants are residents of Texas and other states and are subject to long-arm jurisdiction because each committed or aided and abetted the commission of a tort in whole or in part in this state.

e.      This Court has jurisdiction over the parties because each purposefully availed themselves of the privilege of conducting activities in the state of Texas and established minimum contacts sufficient to confer jurisdiction over said Defendants, and the assumption of jurisdiction over said Defendants will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

f.      Venue is proper in Tarrant County, Texas pursuant to the general venue statute because all or a substantial part of the events or omissions giving rise to the claim occurred in Tarrant County, Texas.  Venue is further proper in Tarrant County, Texas pursuant to C.P.R.C. §15.093 because the injuries complained of were inflicted in Tarrant County.  Venue is further proper pursuant to C.P.R.C. §15.088 because suit is brought against a nonresident of this State and Plaintiff's principal place of business is Tarrant County, Texas.

4.    Facts

    a.    Vibraderm is a Texas corporation doing business globally as a leader in the

industry of cosmetic skin resurfacing.  Vibraderm's products and proprietary technology are at

the cutting edge of medical technology, and the company has invested millions of dollars of

resources into researching, developing, designing, and acquiring rights to use such technology.

Few companies are in existence in the market in which Vibraderm conducts its principal

business, largely due to high start-up costs associated with the design and employment of

appropriate technology, and closely guarded private information for clients and contacts in the

industry.  Vibraderm's products are supported by over six years of intensive research and

development, and its products are currently in their twenty-fifth generation, making Vibraderm's

products the industry leader in quality and reputation.

    b.    The cosmetic skin resurfacing industry is a relatively young industry, and

Vibraderm is widely recognized as the leader in new and emerging vibradermabrasion techniques

and equipment alternatives.   A unique aspect of Vibraderm's business model is that each patient

purchases a paddle kit.  These paddles are personal to the patient, and vibrate at an intense

frequency, assisting in the exfoliating process and causing the rapid infusion of treatment

chemicals into the skin.  Vibraderm's paddle technology provides it a competitive edge in the

industry.  Because Vibraderm's products operate at a unusually high degree of mechanical and

electrical precision, few manufacturers in the world are capable of producing the Vibraderm

paddles and handsets to Vibraderm specifications.  Prior to the events leading to this suit,

Vibraderm was the only company employing the use of such patient-specific paddles.

    c.    In late 2004 Carroll, the president of an ailing medical supply company, Mid-West

Medical, Inc. (Mid-West) became aware of Vibraderm and expressed a desire to invest in the

company. As part of the transaction, Mid-West became a distributor for Vibraderm products and began to sell approximately five units per month, with an average revenue of sixteen thousand five hundred thousand dollars per unit. Carroll acquired the shares in Vibraderm, and was installed as a director.

d.     After Carroll became a director, he began to engage in activities which at the time, were not known by Vibraderm to be improper, but in reality constituted the first steps to Carroll's plan of economic espionage. A portion of Vibraderm's confidential business information is maintained in secure off-site electronic storage. Vibraderm pays monthly fees to ensure the protection of its business information, and to guard against unauthorized access. After becoming an director, Vibraderm has learned that Carroll contacted the off-site storage provider covertly to attempt to acquire the information, and was refused access by the security provider. Shortly thereafter, in or about June 2006, Carroll began to demand that the corporation provide him with certain business information, including allowing him to personally visit corporate headquarters, and review all company sales documents, manufacturing and licensing agreements, customer lists, sales contacts, and other business records of the corporation. Because the level of detail of information requested was suspicious, corporate counsel was engaged to request that Carroll designate a proper shareholder purpose for the requests. Carroll refused to state his purpose in requesting copies of the information.

e.     To guard against the potential for improper dissemination, but to accommodate Carroll's request as a director, an agreement was made wherein the company caused to be copied to compact disk, the information Carroll was seeking, with the stipulation that Carroll could inspect the information, but he was not permitted to leave the Vibraderm offices with the information, which constituted the current books and records of the business, customer lists,

Plaintiff's Original Petition
And Application For
Temporary Restraining Order                                                                 Page 6

vendor and supplier lists, manufacturing contacts, and other proprietary information. Carroll used the disk at the office, but then covertly left the office with the disk and Vibraderm's confidential trade secret information.

f.      As soon as Carroll acquired the proprietary business information of Vibraderm, Mid-West's sales of Vibraderm's equipment ceased without explanation. Carroll then used the improperly acquired trade secrets of Vibraderm to establish a competing entity, and in concert with the management of that entity, steal Vibraderm's business model and use its trade secrets to the prejudice of Vibraderm. All of these actions occurred while Carroll was a director of Vibraderm.

g.      Thereafter, in or about September 2006, Carroll made demand for the redemption of his shares for the sum of $300,000. In October 2006 Carroll signed a written affidavit acknowledging that the materials he appropriated on the compact disk were trade secrets, and further warranting that he had either returned or destroyed all confidential company information. Carroll further expressly warranted that he would not use company trade secrets in competition with Vibraderm. Carroll's statements were designed to fraudulently conceal the fact that Carroll had acquired copied and was actually in the process of secretly competing with Vibraderm.

h.      Carroll then began a campaign to disparage Vibraderm, which included filing suit against the company, and authoring and delivering to the company's customers, suppliers, and business affiliates a variety of "press releases" in which Carroll stated that the company was being mismanaged, and was financially unstable. The releases were delivered to the customers off the client list Carroll had acquired on the compact disk. The statements by Carroll were false, and groundless, and were designed to allow Carroll's new secret company, Multiderm, to tortiously acquire the business opportunities of Vibraderm. Multiderm and its agents began to

call on the Vibraderm customers that received the false "press releases." Carroll, while a director

of Vibraderm, did not reveal that he had formed Multiderm, that he had misappropriated the

confidential trade secrets of Vibraderm, or that he was competing with Vibraderm. This pattern

of disparagement to Vibraderm customers continues to this date, where Carroll has made

defamatory representations to Vibraderm customers in Dallas, Texas, on internet blogs, and other

fora.

      i.     Carroll conspired with Jansing to form Multiderm, Inc. in October 2006, installing

Jansing as manager and tendering to Multiderm, Vibraderm's trade secrets. When Carroll

realized director information would be reported in public records, thus exposing his role in the

competing enterprise, Carroll and Jansing conspired to conceal the existence of the ownership of

Carroll's competition through Multiderm from the public record, and converted the entity to a

limited liability company in December 2006, disclosing only Jansing as the manager of same.

      j.     Multiderm, Carroll, Jansing, and those aiding and abetting them hired

manufacturers to manufacture clone products with substantially inferior parts; acquired from

Vibraderm contractors patient paddles; and from Russ McKee, a Vibraderm contractor, a

Vibraderm handset, for the purpose of reverse engineering the handset and repackaging

Vibraderm parts and selling them as Multiderm equipment. Multiderm further obtained a Small

Business Administration Loan in February 2007 as a "going concern." Carroll's actions extended

beyond merely preparing to compete. These acts were all fraudulently concealed from

Vibraderm through the artifice employed by Carroll as well as Carroll's false statements that he

would not use the trade secret information of Vibraderm to compete with Vibraderm, or for the

benefit of Multiderm.

      k.     Carroll's shares were redeemed by the corporation on or about March 2007, and

Plaintiff's Original Petition
And Application For
Temporary Restraining Order

the redemption suit was dismissed with prejudice in May 2007. Contrary to Carroll's statements under oath, Carroll and those acting in concert with him continue to take tortious actions to misappropriate the trade secrets of Vibraderm, and now, post-settlement, continues to use same for the benefit of Multiderm. Among other actions, Carroll used the data removed from company computers including customer lists, web page design materials, product designs, supplier lists, supplier agreements, lists of sales persons, manufacturing contacts, schematics, specifications, and other data. Multiderm established a website based on the hypertext markup language, code, and design of Vibraderm's website. It copied Vibraderm's promotional materials. It marketed its products as "identical" to Vibraderm's products "only cheaper." Based on the stolen research, development and manufacturing data Carroll stole, it commissioned a factory to cosmetically duplicate Vibraderm's products, using inferior electronics. Carroll, and the defendants in this case, took these actions to appropriate Vibraderm's trade secrets including its business model and "playbook" on behalf of and for the use of Multiderm.

1.      The defendants further continued to solicit Vibraderm agents and contractors, and contacted physicians, suppliers, and customers to disparage the business of Vibraderm to obtain sales for Multiderm. In so doing, Carroll, individually and on behalf of Multiderm appropriated trade secrets and interfered wrongfully with existing and prospective contractual relationships between Vibraderm and its customers, suppliers, and physician sponsors. All of the information appropriated by Carroll was treated by Vibraderm as confidential and could not be acquired in any other way than by years of experience in Vibraderm's business and the expenditure of millions of dollars in research, development, and testing.

1.      Since the date of redemption of Carroll's shares in Vibraderm, Carroll by and through his representatives and the representatives of Multiderm has represented to physicians,

distributors, and customers that Vibraderm is going out of business, and the customers could buy the identical equipment from Multiderm for a cheaper price. In furtherance and in evidence of Carroll's intent to compete with Vibraderm using Vibraderm's trade secrets, in April 2007, Carroll purchased and staffed a booth at the American Academy of Anti-Aging Medicine, where he utilized trade show exhibits and equipment to market Multiderm's products that were based on Vibraderm's trade secrets. The defendants' use of Vibraderm's trade secrets is not only probable or inevitable, it is actual.

m. Each of the foregoing acts and omissions are incorporated into the following paragraphs as if set forth therein in their entirety. In doing the acts and omissions alleged in this petition, the defendants acted in concert, aided and abetted one another, and conspired to commit the torts alleged herein. Each of the defendants aiding and abetting Carroll in his breaches of fiduciary duty are independently liable for actual and exemplary damages because a party who aids and abets the breach of a fiduciary is liable to the same extent as the fiduciary. Toles v. Toles, 113 S.W.3d 899 (Tex. App. --Dallas 2003). "It is settled as the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such." Kinzbach Tool Co. v. Corbett-Wallace Corp., 138 Tex. 565, 160 S.W.2d 509, 514 (1942); Kline v. O'Quinn, 874 S.W.2d 776, 786 (Tex. App.--Houston [14th Dist.] 1994, writ denied); Horton v. Robinson, 776 S.W.2d 260, 266 (Tex. App. --El Paso 1989, no writ); Herider Farms-El Paso, Inc. v. Criswell, 519 S.W.2d 473, 477 (Tex. App.--El Paso 1975, writ ref'd n.r.e.).

5.    Misappropriation of Trade Secrets

a. In doing the acts alleged, Carroll breached his fiduciary duty to Vibraderm, and in breach of such confidential relationship, and through improper conduct, Carroll discovered and

appropriated Vibraderm's trade secrets, and used same for the benefit of Carroll, Midwest Medical,  and Multiderm, causing Vibraderm damages in an amount in excess of minimum jurisdictional limits of this Court.

b.      The secrets appropriated by Carroll were patterns, devices, customer lists, marketing information, and other compilations of information used in Vibraderm's business such as pricing information, client information, customer preferences, buyer contacts, market strategies, blueprints, and drawings.  The information stolen is such information that gives Vibraderm an opportunity to obtain an advantage over competitors who do not know or use it. As the result of Carroll's conduct, Vibraderm "finds itself in the position of a coach, one of whose players has left, playbook in hand, to join the opposing team before the big game." PepsiCo, Inc. v. Redmond, 54 F.3d 1262 (7th Cir. 1995).

c.      The information stolen by Carroll is information that was not generally known outside the business; and was made available only to officers and directors in Vibraderm.  It is telling that prior to Carroll's involvement with Vibraderm, neither Carroll nor Midwest Medical was involved in the cosmetic vibradermabrasion industry.  After Carroll became an officer and director, and appropriated Vibraderm's trade secrets, Carroll's new company Multiderm became the only competitor of Vibraderm to employ the same paddle design as Vibraderm.

d.      The information stolen by Carroll is the information comprising the very heart of the Vibraderm's business model, and was developed over years through significant investment of effort and money.  The information could not be properly acquired or duplicated by others without similar investment, effort, and expense.  Carroll used that information to avoid normal costs of entry into the market, and to hijack and appropriate Vibraderm's business.

e.      Vibraderm sues for the protection of its trade secrets, and seeks money damages at

law, the imposition of a constructive trust and equitable lien at equity, and injunctive relief

prohibiting defendants from making use of Vibraderm's trade secrets, or property derived from

the wrongful use or appropriation of such secrets.

6.   Breach Of Fiduciary Duty and Constructive Fraud

a.   As a director agent of Vibraderm, Carroll owed a fiduciary duty to the

corporation.

b.   Part of Carroll's duty includes a duty to refrain from using confidential or

proprietary information acquired during the relationship in a manner adverse to the corporation.

This obligation survives termination of the employment relationship, and continues through to

the instant date.

c.   It is further established that "In Texas, courts condemn the employment of

improper means to procure trade secrets." American Precision Vibrator Co. v. National Air

Vibrator Co., 764 S.W.2d 274 (Tex. App. --Houston [1st Dist.] 1988).

d.   In this case, Carroll breached his fiduciary duty to the corporation, and acquired

its trade secrets for the purpose of competing with Vibraderm.  Carroll, in concert with others,

took affirmative steps to conceal the fact that he was misappropriating and converting the trade

secrets of Vibraderm, and using the trade secrets of Vibraderm for the benefit of the defendants.

Carroll, individually and in concert with others, in further violation of his fiduciary duty

fraudulently and by means of deception concealed from Vibraderm, his activities, although he

knew they were tortious.

e.   Carroll stole plans, customer lists, supplier lists, and business plans, and hired a

manufacturer to duplicate Vibraderm's products for sale by the defendants pursuant to the stolen

business plan.  Vibraderm shows that although Carroll owed a duty of loyalty and full disclosure,

Carroll breached those duties and fraudulently concealed from Vibraderm his conduct and intentions. Carroll's fraudulent concealment of his multiple violations of his fiduciary duty extends through to the instant date, and represents a current, ongoing, and continuous course of tortious conduct. Carroll failed to deal with Vibraderm with the most abundant good faith, with absolute and perfect candor or openness and honesty, and with the absence of any concealment or deception. Carroll's duty not to improperly utilize the trade secret of Vibraderm extends beyond the termination of his status of director, and Carroll remains under a fiduciary obligation to this date not to utilize the trade secret or confidential information of Vibraderm in competition with Vibraderm.

       f.     Carroll's breach has caused Vibraderm substantial general, special, and economic damages in an amount in excess of the jurisdictional limits of this Court. Further, the acts and omissions complained of herein, were fraudulent and criminal in nature and Vibraderm is entitled to recover exemplary damages pursuant to C.P.R.C. §41.003 and §41.005. Accordingly, Vibraderm seeks exemplary damages in addition to all other damages alleged herein.

7.     Constructive Trust

       a.     A constructive trust may be imposed on property obtained by fraud. Thigpen v. Locke, 6 Tex. Sup. Ct. J. 157, 363 S.W.2d 247, 250 (Tex. 1962). Vibraderm further shows that because corporate directors owe a fiduciary duty to their corporation, a corporate fiduciary is under the obligation not to usurp corporate opportunities for personal gain. Under the corporate opportunity doctrine, the interest acquired by an officer or director is charged with a trust for the corporation's benefit, and a constructive trust is the proper remedial device to hold the fiduciary accountable. International Bankers Life Ins. Co. v. Holloway, 6 Tex. Sup. Ct. J. 426, 368 S.W.2d 567, 577 (Tex. 1963).

b.    Multiderm and on information, Midwest Medical's vibradermabrasion business is to be built wholly on the trade secret information stolen from Vibraderm by Carroll. The entities are in substance owned and controlled by Carroll and Jansing. Because Carroll obtained and converted the information in constructive fraud, and in breach of his fiduciary obligations to Vibraderm, aided and abetted by the other defendants, Vibraderm requests that the Court disgorge the proceeds of such breach and impose a constructive trust over all proceeds arising as the result of the breach. The imposition of such trust should include all of the profits, proceeds, and benefits of each defendant's sales of any Multiderm equipment, or any proceeds arising from such business.

c.    Vibraderm shows that Texas law provides for the imposition of such constructive trust over all profits, proceeds, and benefits flowing as a consequence of a breach of fiduciary duty. See e.g. Kinzbach Tool Co. v. Corbett-Wallace Corp., 138 Tex. 565, 160 S.W.2d 509 (Tex. 1942). Further, such remedy is consistent with the principles set forth in the RESTATEMENT OF RESTITUTION §§ 160, 190 (1937).

d.    Vibraderm prays for the imposition of such constructive trust, and for the imposition of an equitable lien over the trust property, together with any proceeds or property acquired in whole or in part with such proceeds. Vibraderm further requestst that the Court order foreclosure of the equitable lien, and direct that all such property be sold to satisfy same.

8.    Violations of Texas Theft Liability Act

a.    In doing the acts alleged herein, and in further breach of the fiduciary duties owed to Vibraderm, the defendants made Vibraderm a victim of their criminal enterprise, to wit: violations of the Economic Espionage Act of 1996, 18 U.S.C. §§1831-1832.

b.    In doing the acts alleged in this petition, the defendants, with intent to convert a

trade secret, that is related to or included in a product that is produced for or placed in interstate or foreign commerce, knowingly stole, or without authorization appropriated trade secrets belonging to Vibraderm, and further without authorization copied, duplicated, downloaded, transmitted, delivered, and conveyed such information.

       c.     Likewise the defendants received and possessed such information knowing the same to have been stolen or appropriated, obtained, or converted without authorization, and further  used, sold or transmitted same in violation of Vibraderm's rights.

       d.     In doing these acts, defendants violated the Texas Theft Liability Act, C.P.R.C. §134.

       e.     Vibraderm prays for the recovery of its actual damages, statutory damages, and all costs and attorneys fees pursuant to C.P.R.C. §134.005.

9.    Tortious Interference With Actual and Prospective Contractual Relations

       a.     For further cause of action, Vibraderm shows that within the past sixty days, Grady Gibbs, and Russ McKee, "turn-coated" on Vibraderm and began acting as agents for Multiderm contacted prospective clients of Vibraderm known by Multiderm to have entered into agreements to purchase Vibraderm equipment on at least four occasions.  Further, on information and belief McKee converted Vibraderm equipment for the purpose of making it available to Multiderm for reverse manufacturing.  As the Court recognized in Centennial Mutual Life Association v. Parham, 80 Tex. 518, 16 S.W. 316 (Tex. 1891) " When an agent, however, ceases to act for his principal in good faith and through collusion with another, desiring through him to cheat and defraud the principal, practically enters into the service of that other for the purpose of promoting the interest of that person, or the common interest of himself and that other, in fraud of his principal . . . the agent Pro hac vice becomes the agent of the person he collusively

serves."

b.    Each of the agents of Multiderm represented to Vibraderm's prospective clients that Vibraderm was financially insolvent and going out of business.  The statements made were false and defamatory statements, and were made by Multiderm's agents with the intent to prevent execution of the prospective contracts, and to disparage Vibraderm.  The statements were false and defamatory, and therefore independently tortious in nature.

c.    As a direct and proximate cause of the acts of tortious interference, Vibraderm has sustained economic damages in excess of $100,000, and continues to suffer additional damages each additional day.

10.    Request for Temporary Restraining Order and Injunction

a.    The protection of a trade secret is a well-recognized objective of equity.  K & G Oil Tool & Service Co. v. G & G Fishing Tool Service, 158 Tex. 594, 314 S.W.2d 782 (Tex. 1958).  This is because trade secrets are subject to protection under the equitable jurisdiction of state courts.  Hyde Corp. v. Huffines, 158 Tex. 566, 314 S.W.2d 763 (Tex. 1958).

b.    In determining whether to grant trade secret protection through a temporary injunction, a trial court determines whether the applicant has established that the information is entitled to trade secret protection pending the trial on the merits.  IAC, Ltd. v. Bell Helicopter Textron, Inc., 160 S.W.3d 191, 197 (Tex. App. --Fort Worth 2005, no pet.).

c.    Enjoining an agent or former agent from using an principal's confidential information is appropriate when it is probable that the former agent will use the confidential information for his benefit, or his new employer's benefit, or to the detriment of his former employer.  Rugen v. Interactive Bus. Sys., Inc., 864 S.W.2d 548, 552 (Tex. App. --Dallas 1993, no writ) ("Rugen is in possession of IBS's confidential information and is in a position to use it.

Under these circumstances, it is probable that Rugen will use the information for her benefit and to the detriment of IBS."); see also Williams v. Compressor Eng'g Corp., 704 S.W.2d 469, 470-72 (Tex. App. --Houston [14th Dist.] 1986, writ ref'd n.r.e.).

d.      Virbraderm prays pursuant to Tex. Bus. & Com. Code § 16.29 and on equitable grounds for a temporary restraining order, temporary injunction, and after trial on the merits, a permanent injunction. Vibraderm shows that it is the owner of certain property or rights threatened with irreparable injury by the conduct of the defendants, their agents, and those acting in active concert with them.

e.      In particular, Vibraderm is a business located in Tarrant County, Texas that, for over six years has manufactured and sold speciality medical devices. During that time, Vibraderm has built up an extensive and confidential customer list, acquired unique skills and special knowledge of the equipment involved, manufacturing processes, marketing strategy, product design, and of customer needs, and has developed goodwill in the business community.

f.      As set forth in the facts set out elsewhere in this petition, Carroll came into possession of Vibraderm's trade secrets through breaches of his fiduciary duty to Vibraderm, and the remaining defendants aided and abetted Carroll in the use and dissemination of the secret information in violation of the duties owed by Carroll to Vibraderm.

g.      Carroll was trained by Vibraderm in the intricacies of the industry, and while the companies owned by Carroll were not in the cosmetic vibradermabrasion business prior to Carroll's involvement with Vibraderm, those companies entered that market after Carroll supplied them with Vibraderm's trade secrets, "playbook," and know-how.

h.      Carroll, in concert with the named defendants have threatened irreparable harm to Vibraderm's property and rights by starting a clone business, resigning from Vibraderm, selling

Vibraderm paddles as their own, disparaging Vibraderm, actively soliciting Vibraderm's customers, contractors, and suppliers, disparaging Vibraderm, and offering those goods and services for sale in the narrow vibradermabrasion market, causing confusion in the marketplace. Further, the defendants have knowingly received trade secret property and knew or should have known that such property was stolen by Carroll. The defendants have sold or resold such property, transmitted said property, and placed same in the stream of commerce in Texas and elsewhere.

i.     Carroll's conduct, and the conduct of the defendants is completely without right or entitlement in that such actions are in violation of the duties described in this petition, and such actions amount to the theft of Vibraderm's trade secrets.

j.     Vibraderm has and will continue to be damaged and injured by the defendants' conduct by loss of customers, loss of goodwill, confusion in the marketplace, and the loss of and permanent injury to the value of the trade secrets amassed by Vibraderm over the years, such as: the identity of Vibraderm's customers, the particular and peculiar business needs of each of these customers, Vibraderm's unique knowledge of the equipment owned by each customer, Vibraderm's unique methods of doing business, usurpation of Vibraderm's opportunities to develop relationships with physicians and others in the marketplace, and by promoting a version of Vibraderm's product that is technically unsound and inferior, thus causing confusion in the marketplace.

k.     Vibraderm has no adequate remedy at law for the injuries just described. The injuries and losses are continuing. The property and rights involved are unique and irreplaceable, so that it will be impossible to accurately measure, in monetary terms, the damages caused by the defendants' conduct. The losses to the plaintiff from Carroll's conduct are likely to

exceed the financial worth of Carroll and the entities made the subject of this suit, so as to prevent any adequate compensation to Vibraderm, even if money damages were a sufficient remedy.

l.      For the reasons stated in this pleading, Vibraderm requests that, after trial, this Court permanently enjoin the defendants Carroll and Multiderm, their agents, and those acting in active concert with them from:

1.      soliciting any persons whose identities are contained on the stolen compact disk for sales, service, manufacture, or repair of vibradermabrasion equipment;

2.      using or attempting to use the trade secret information of Vibraderm for any purpose;

3.      selling or offering for sale products incorporating the "patient specific paddle" design, which design is the property of Vibraderm;

4.      maintaining an internet website substantially similar to Vibraderm's proprietary design and coding;

5.      disparaging Vibraderm, its principals, agents, business, or products;

6.      spending or disposing in any way of profits or proceeds arising from the sales of equipment and services of vibradermabrasion equipment, other than to deposit same into the registry of this Court to be held pending a final determination of the extent of the arising constructive trust.

m.      It is essential that the court immediately and temporarily restrain the defendant from continuing with the conduct described in this petition.  It is essential that the court act immediately, prior to notice on the defendant and a hearing on the matter, because defendants'

conduct is active and ongoing, and Vibraderm continues to suffer daily losses as the result of defendants' active use. Defendants' continue to solicit Vibraderm's customers each day, and has told each of such customers so far, and will continue to tell each of Vibraderm's remaining customers, that Vibraderm has gone or is about to go out of business.

n.     In order to preserve the status quo and the property and rights of Vibraderm during the pendency of this action, defendants should be cited to appear and show cause why they should not be temporarily restrained, during the pendency of this action, from:

1.     soliciting any persons whose identities are contained on the stolen compact disk for sales, service, manufacture, or repair of vibradermabrasion equipment;

2.     using or attempting to use the trade secret information of Vibraderm for any purpose;

3.     selling or offering for sale products incorporating the "patient specific paddle" design, which design is the property of Vibraderm;

4.     maintaining an internet website substantially similar to Vibraderm's proprietary design and coding;

5.     disparaging Vibraderm, its principals, agents, business, or products;

6.     spending or disposing in any way of profits or proceeds arising from the sales of equipment and services of vibradermabrasion equipment, other than to deposit same into the registry of this Court to be held pending a final determination of the extent of the arising constructive trust.

o.     For these reasons, Vibraderm requests that a temporary restraining order be issued without notice to defendants, restraining defendants, their agents, servants, and employees, from

Plaintiff's Original Petition
And Application For
Temporary Restraining Order                                                                        Page 20

directly or indirectly:

> 1.    soliciting any persons whose identities are contained on the stolen compact disk for sales, service, manufacture, or repair of vibradermabrasion equipment;
>
> 2.    using or attempting to use the trade secret information of Vibraderm for any purpose;
>
> 3.    selling or offering for sale products incorporating the "patient specific paddle" design, which design is the property of Vibraderm;
>
> 4.    maintaining an internet website substantially similar to Vibraderm's proprietary design and coding;
>
> 5.    disparaging Vibraderm, its principals, agents, business, or products;
>
> until further order of this Court.

p.    Vibraderm further requests that a temporary injunction be issued, after notice to defendant and an evidentiary hearing, restraining defendants, their agents, servants, and employees, directly or indirectly from:

> 1.    soliciting any persons whose identities are contained on the stolen compact disk for sales, service, manufacture, or repair of vibradermabrasion equipment;
>
> 2.    using or attempting to use the trade secret information of Vibraderm for any purpose;
>
> 3.    selling or offering for sale products incorporating the "patient specific paddle" design, which design is the property of Vibraderm;
>
> 4.    maintaining an internet website substantially similar to Vibraderm's

proprietary design and coding;

5.    disparaging Vibraderm, its principals, agents, business, or products;

6.    spending or disposing in any way of profits or proceeds arising from the sales of equipment and services of vibradermabrasion equipment, other than to deposit same into the registry of this Court to be held pending a final determination of the extent of the arising constructive trust; during the pendency of this action.

q.    Vibraderm further requests that a permanent injunction be issued, on final trial of this cause, enjoining defendants, their agents, servants, and employees, directly or indirectly from

1.    soliciting any persons whose identities are contained on the stolen compact disk for sales, service, manufacture, or repair of vibradermabrasion equipment;

2.    using or attempting to use the trade secret information of Vibraderm for any purpose;

3.    selling or offering for sale products incorporating the "patient specific paddle" design, which design is the property of Vibraderm;

4.    maintaining an internet website substantially similar to Vibraderm's proprietary design and coding;

5.    disparaging Vibraderm, its principals, agents, business, or products; for all time.

r.    Vibraderm prays that the Court set the bond for the temporary restraining order at $100.

Plaintiff's Original Petition
And Application For
Temporary Restraining Order

<u>PRAYER:</u>

1.  WHEREFORE, PREMISES CONSIDERED, VIBRADERM prays :

  a.  That defendants be cited to appear and answer;

  b.  For damages within the jurisdictional limits of the Court;

  c.  Exemplary damages;

  d.  Injunctive relief as set forth in the body of this petition;

  e.  Costs of suit including reasonable attorney's fees;

  f.  Such other and further relief to which Vibraderm may be justly entitled

including but not limited to pre-judgment and post-judgment interest as

allowed by law.

      Respectfully submitted,
      MARCHAND & MORAINE, L.L.P.


      by: _____
      DAVID J. MORAINE
      TEXAS BAR NUMBER 00795830
      One Hundred Nine South Woodrow Lane
      Suite 300
      Denton, Texas 76205
      (940) 243-2876
      (940) 384-1821 FAX
      ATTORNEY IN CHARGE

      GARY LEE HACH
      THE HACH LAW OFFICES
      312 West Northwest Highway, Suite B
      Grapevine, Texas 76051
      (817) 421-3600
      (817) 421-3680 FAX

      ATTORNEYS FOR VIBRADERM

STATE OF TEXAS                          §
COUNTY OF DALLAS                        §

<u>AFFIDAVIT</u>

On this date appeared before me, the undersigned Notary Public, Terry Osborn, who upon being duly sworn, did then and there depose and testify as follows:

"My name is Terry Osborn.  I am over the age of eighteen and am competent to make this affidavit.  I have personal knowledge of the facts contained herein, and they are true and correct to the best of my personal knowledge.

I am the President of Vibraderm, Inc.  I am submitting this affidavit in support of Vibraderm's application for temporary restraining order.  Plaintiff Vibraderm, Inc. seeks injunctive relief prohibiting the use and dissemination of Vibraderm's trade secret information, including Vibraderm's confidential customer and contacts list, marketing plan, research and development information, and business model; and the disparagement of Vibraderm by and through the Defendants.

The trade secrets were covertly acquired by Defendant Carroll while a director and fiduciary of Vibraderm, as set forth more fully in this affidavit.  The use of the stolen trade secrets is ongoing and continuous and causes injury for which there is no adequate remedy at law, including instant and ongoing solicitation of Vibraderm's customers, and confusion in the marketplace caused by the Defendants' actions, disparagement of Vibraderm's business reputation and products, and misuse of Vibraderm's confidential trade secrets.

Vibraderm is a Texas corporation doing business globally as a leader in the industry of cosmetic skin resurfacing.  Vibraderm's products and proprietary technology are at the cutting edge of medical technology, and the company has invested millions of dollars of resources into researching, developing, designing, and acquiring rights to use such technology.  Few companies are in existence in the market in which Vibraderm conducts its principal business, largely due to high start-up costs associated with

1

the design and employment of appropriate technology, and closely guarded private information for clients and contacts in the industry.  Vibraderm's products are supported by over six years of intensive research and development, and its products are currently in their twenty-fifth generation, making Vibraderm's products the industry leader in quality and reputation.

The cosmetic skin resurfacing industry is a relatively young industry, and Vibraderm is widely recognized as the leader in new and emerging vibradermabrasion techniques and equipment alternatives.   A unique aspect of Vibraderm's business model is that each patient purchases a paddle kit.  These paddles are personal to the patient, and vibrate at an intense frequency, assisting in the exfoliating process and causing the rapid infusion of treatment chemicals into the skin.  Vibraderm's paddle technology provides it a competitive edge in the industry.  Because Vibraderm's products operate at a unusually high degree of mechanical and electrical precision, few manufacturers in the world are capable of producing the Vibraderm paddles and handsets to Vibraderm specifications.  Prior to the events leading to this suit, Vibraderm was the only company employing the use of such patient-specific paddles.

In late 2004 Defendant Carroll, the president of an ailing medical supply company, Mid-West Medical, Inc. (Mid-West) became aware of Vibraderm and expressed a desire to invest in the company. As part of the transaction, Mid-West became a distributor for Vibraderm products and began to sell approximately five units per month, with an average revenue of sixteen thousand five  hundred thousand dollars per unit.  Carroll acquired the shares in Vibraderm and assumed the office of director.

After Carroll became a director, he began to engage in activities which at the time, were not known by Vibraderm to be improper, but in reality, were so.  A portion of Vibraderm's confidential business information is maintained in secure off-site electronic storage.  Vibraderm pays monthly fees to ensure the protection of its business information, and to guard against unauthorized access.  After becoming an director, Carroll contacted the off-site storage provider covertly to attempt to acquire the

2

information, and was refused access by the security provider.  Shortly thereafter, in or about June 2006, Carroll began to demand that the corporation provide him with certain business information, including allowing him to personally visit corporate headquarters, and review all company sales documents, manufacturing and licensing agreements, customer lists, sales contacts, and other business records of the corporation.  Because the level of detail of information requested was suspicious, corporate counsel was engaged to request that Carroll designate a proper shareholder purpose for the requests.  Carroll refused to state his purpose in requesting copies of the information.

To accommodate Carroll's request as a director, an agreement was made wherein the company caused to be copied to compact disk, the information Carroll was seeking, with the stipulation that Carroll could inspect the information, but he was not permitted to leave the Vibraderm offices with the information, which constituted the current books and records of the business, customer lists, vendor and supplier lists, manufacturing contacts, and other proprietary information.  Carroll used the disk at the office, but then covertly left the office with the disk and Vibraderm's confidential trade secret information.

As soon as Carroll acquired the proprietary business information of Vibraderm, Mid-West's sales of Vibraderm's equipment ceased without explanation.  Carroll then used the improperly acquired trade secrets of Vibraderm to establish a competing entity, and in concert with the management of that entity, steal Vibraderm's business model and use its trade secrets to the prejudice of Vibraderm.  All of these actions occurred while Carroll was a director of Vibraderm.  Today, Mid-West Medical, Inc. (Carroll's old company) is a "distributor" of Multiderm products.

In October 2006 Carroll signed a written affidavit acknowledging that the materials he appropriated on the compact disk were trade secrets, and  further warranting that he had either returned or destroyed all confidential company information.  Carroll further expressly warranted that he would not use company trade secrets in competition with Vibraderm.  Carroll's statements were designed to

3

fraudulently conceal the fact that Carroll had acquired copied and was actually in the process of secretly competing with Vibraderm.

Carroll also began a campaign to disparage Vibraderm, which included filing suit against the company, and authoring and delivering to the company's customers, suppliers, and business affiliates a variety of "press releases" in which Carroll stated that the company was being mismanaged, and was financially unstable.   The releases were delivered to the customers off the client list Carroll had acquired on the compact disk.  The statements by Carroll were false, and groundless, and were designed to allow Carroll's new secret company, Multiderm, to tortiously acquire the business opportunities of Vibraderm.  This pattern of disparagement continues through this day.  Attached hereto as Exhibit A are "blogs" demonstrating the impact of Carroll's behavior in causing confusion in the marketplace.  Interesting, none of the persons writing these comments are Vibraderm customers. Accordingly, it is probable that the authors and disseminators are either Carroll or his agents; or persons who have been exposed to Carroll's misrepresentations.

Multiderm and its agents began to call on the Vibraderm customers that received the false "press releases."  Carroll, while a director of Vibraderm, did not reveal that he had formed Multiderm, that he had misappropriated the confidential trade secrets of Vibraderm, or that he was competing with Vibraderm.  This pattern of disparagement to Vibraderm customers continues to this date, where Carroll has made defamatory representations to Vibraderm customers in Dallas, Texas, on internet blogs, and other fora.

Multiderm, Carroll,  Jansing, and those aiding and abetting them hired manufacturers to manufacture clone products with substantially inferior parts; acquired from Vibraderm contractors patient paddles; and from Russ McKee, a Vibraderm contractor, a Vibraderm handset, for the purpose of reverse engineering the handset and repackaging Vibraderm parts and selling them as Multiderm equipment.  Multiderm further obtained a Small Business Administration Loan in February 2007 as a

"going concern." Carroll's actions extended beyond merely preparing to compete. These acts were all fraudulently concealed from Vibraderm through the artifice employed by Carroll as well as Carroll's false statements that he would not use the trade secret information of Vibraderm to compete with Vibraderm, or for the benefit of Multiderm.

Among other actions, Carroll through Multiderm used the data removed from company computers including customer lists, web page design materials, product designs, supplier lists, supplier agreements, lists of sales persons, manufacturing contacts, schematics, specifications, and other data. Multiderm established a website based on the hypertext markup language, code, and design of Vibraderm's website. It copied Vibraderm's promotional materials. It marketed its products as "identical" to Vibraderm's products "only cheaper." Based on the stolen research, development and manufacturing data Carroll stole, it commissioned a factory to cosmetically duplicate Vibraderm's products, using inferior electronics. Carroll, and the defendants in this case, took these actions to appropriate Vibraderm's trade secrets including its business model and "playbook" on behalf of and for the use of Multiderm.

The defendants further continued to solicit Vibraderm agents and contractors, and contacted physicians, suppliers, and customers to disparage the business of Vibraderm to obtain sales for Multiderm. In so doing, Carroll, individually and on behalf of Multiderm appropriated trade secrets and interfered wrongfully with existing and prospective contractual relationships between Vibraderm and its customers, suppliers, and physician sponsors. All of the information appropriated by Carroll was treated by Vibraderm as confidential and could not be acquired in any other way than by years of experience in Vibraderm's business and the expenditure of millions of dollars in research, development, and testing.

Since the date of redemption of Carroll's shares in Vibraderm, Carroll by and through his representatives and the representatives of Multiderm has represented to physicians, distributors, and

customers that Vibraderm is going out of business, and the customers could buy the identical

equipment from Multiderm for a cheaper price.  In furtherance and in evidence of Carroll's intent to

compete with Vibraderm using Vibraderm's trade secrets, in April 2007, Carroll purchased and staffed a

booth at the American Academy of Anti-Aging Medicine, where he utilized trade show exhibits and

equipment to market Multiderm's products that were based on Vibraderm's trade secrets.  The

defendants' use of Vibraderm's trade secrets is not only probable or inevitable, it is actual.

Vibraderm is seeking a temporary restraining order restraining Carroll and the other defendants

from using the confidential trade secrets of Vibraderm, Inc., as more fully set forth in the application

for temporary restraining order."

Further affiant sayeth not.

Terry Osborn
President, Vibraderm, Inc.

Subscribed and sworn to before me, Terry Mark Maculuso, Notary Public In
And For The State Of Texas on this the 19th day of July, 2007.

MARK MACALUSO
MY COMMISSION EXPIRES
January 10, 2011

Notary Public

6

**#6**

06-22-2007, 08:36 PM

SSheppard
Registered User

Join Date: Jun 2007
Posts: 2

Works for a very short time. I own a spa with one and the handpiece heated up and teh company refused to honor my warranty...saying I dropped it.

Stay away. Try www.multi-derm.com. New and improved. I am purchasing one next week.

Quote:

Originally Posted by **JNallyKP**:
anyone heard of this...?
http://www.vibraderm.com/

View Public Profile

Send a private message to SSheppard

Find More Posts by SSheppard

Add SSheppard to Your Buddy List

**#7**

06-22-2007, 08:39 PM

SSheppard
Registered User

Join Date: Jun 2007
Posts: 2

I am in the industry and have been told Vibraderm is borrowing money to stay afloat. Very small and poorly run company. They do not honor warranties also.

I haven't looked into it much yet but I am VERY interested. That site you linked to does say this about KP:

**Keratosis Pilaris** is a condition that 40-45% of the women over 40 are experiencing in the U.S. The Vibraderm offers a management treatment to improve the appearance of the KP for those patients. **Vibradermabrasion** treatments are done with the large body paddle for 3 to 4 minutes per arm. The **Vibrafusion** process for KP is typically 3-4 minutes long. Many of the physicians are



utilizing the Glytone Keratosis Polaris Personal Home Kit that contains 20% Glycolic Acid for the **Vibrafusion** treatment. Note: KP is not just found on arms. Many patients deal with KP problems in other areas of the body and the Vibraderm Skin Station gives you the flexibility to treat where you need. Belinda Ruda, Manager of Medic Spa in Atlanta said, **"I find the Vibraderm does a great job removing Keratosis Polaris (chicken Skin) and the Vibrafusion technology seems to manage the skin problem better than anything on the market."**

Maybe it's worth a try??[/QUOTE]





**SSheppard**

View Public Profile

Send a private message to SSheppard

Find More Posts by SSheppard

Add SSheppard to Your Buddy List

http://www.keratosispilaris.org/showthread.php?t=3114&highlight=vibraderm

# DALLAS COUNTY CIVIL DISTRICT COURT COVER SHEET

STYLED _VIBRADERM, INC. v. MULTIDERM, LLC, ET AL_

This Civil Cover Sheet must be completed, filed and served with every petition. The information should be the best available at the time of filing, understanding that the information may change before trial. _This information does not constitute a discovery request, response, or supplementation, and is not admissible at trial._ Check (✔) all applicable boxes.

**Plaintiff(s)**
- ☐ Pro Se
- Address _____
- _____
- Telephone/Fax _____
- E-mail _____
- ☑ Attorney for Plaintiff(s)
- State Bar No. _00795830_
- Address _10000 N. Central Expy #1043_
- _Dallas, Tx 75231_
- Telephone/Fax _214-378-1043_
- E-mail _DJMORAINE @ MARCHAND MORAINE.com_

**Defendant(s)** (list separately)

_MULTIDERM, LLC_
_TIMOTHY G. CARROLL_
_JAMES JANSING_
_DOES "X"_
_____
_____
_____

_H-16018_   _07-07319_

## PARTIES _MUST_ CHECK ONE CASE TYPE AND MAY CHECK ONE SUB-TOPIC

- ☐ Administrative Appeal
- ☐ Bill of Review
- ☐ Certiorari
- ☐ Code Violations
- ☐ Condemnation
- ☐ Construction
- ☐ Debt/Contract
- ☐ Defamation
- ☑ Other Commercial Dispute
  - ☑ Antitrust/Unfair Comp
  - ☐ Consumer/DTPA
  - ☐ Franchise
  - ☐ Fraud/Misrep
  - ☐ Intellectual Property
  - ☐ Non-Competes
  - ☐ Partnership
  - ☐ Securities/Stock
  - ☐ Tortious Interference
  - ○ Other Commercial
- ☐ Discipline
- ☐ Discovery
  - ☐ Rule 202 Depositions
  - ☐ Commissions
  - ☐ Subpoena
  - ☐ Letters Rogatory
  - ○ Other Discovery
- ☐ Employment
  - ☐ Discrimination
  - ☐ Retaliation

- ☐ Termination
- ○ Other Employment
- ☐ Foreclosure
  - ☐ R 736
  - ☐ Other than R 736
- ☐ Foreign Judgment
- ☐ Insurance
- ☐ Mass Tort/MDL/Rule 11
  - ☐ Asbestos
  - ☐ Baycol
  - ☐ Breast Implant
  - ☐ Firestone
  - ☐ Phen-Fen
  - ☐ Silica
  - ○ Other Multi-Party
- ☐ Motor Vehicle Accident
- ☐ Other Personal Injury
  - ☐ Assault/Battery
  - ☐ Product
  - ☐ Premises
  - ☐ Other Personal Injury
- ☐ Name Change
- ☐ Post-Judgment
- ☐ Professional Liability
  - ☐ Accounting
  - ☐ Legal
  - ☐ Med/Mal
  - ☐ Other Prof. Liab.
- ☐ Property

- ☐ Partition
- ☐ Quiet Title
- ☐ Trespass/Try Title
- ○ Other Property
- ☐ Prejudgment Remedy
- ☐ Seizure/Forfeiture
- ☐ Tax
  - ☐ Tax Appraisal
  - ☐ Tax Delinquency
  - ☐ Tax Land Bank
  - ☐ Tax Personal
  - ☐ Tax Real
- ☐ Workers Comp
- ☐ Other

**ADDITIONAL SUB-TOPICS**
- ☐ Attachment
- ☐ Bill of Discovery
- ☐ Class Action
- ☐ Declaratory Judgment
- ☐ Garnishment
- ☐ Interpleader
- ☐ License
- ☐ Mandamus
- ☐ Receiver
- ☐ Sequestration
- ☐ Severance
- ☐ TRO/Injunction
- ☐ Turnover

### DISCOVERY LEVEL   ☐ Level 1   ☑ Level 2   ☐ Level 3

**Local Rule 1.08 Certification (Must be completed and signed)**
☑ This case is not subject to transfer pursuant to Local Rule 1.07, OR
☐ This case is related to another case filed or disposed of in Dallas County:
Court: _____   Style: _____   Case No. _____

_____
Attorney's Signature



CAUSE NUMBER _07-07319_

| | | |
|---|---|---|
| VIBRADERM, INC.<br>　　　PLAINTIFF | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | |
| | § | |
| | § | |
| | § | |
| MULTIDERM, L.L.C. SUCCESSOR TO | § | |
| MULTIDERM, INC., TIMOTHY G. CARROLL | § | _160th_ JUDICIAL DISTRICT |
| INDIVIDUALLY AND AS AGENT FOR | § | |
| MULTIDERM, INC. AND MULTIDERM, | § | |
| L.L.C.; JAMES JANSING, INDIVIDUALLY | § | |
| AND AS AGENT FOR MULTIDERM, L.L.C. | § | |
| DOES 1, AND 2 AS AGENTS FOR | § | |
| MULTIDERM, L.L.C.; AND DOES "X" | § | |
| INDIVIDUALLY AND AS AGENTS FOR | § | |
| MULTIDERM, L.L.C. | § | D̶A̶L̶L̶A̶S̶ DALLAS |
| 　　　DEFENDANTS | § | T̶A̶R̶R̶A̶N̶T̶ COUNTY, TEXAS |

FILED
2007 JUL 19 PM 3: 51
GARY FITZSIMMONS
DISTRICT CLERK
DALLAS COUNTY TEXAS
_____ DEPUTY

### CERTIFICATE OF COMPLIANCE ON REQUEST FOR EX PARTE RELIEF

"I hereby certify that in conformance with Dallas County Local Rule 2.02 I notified Multiderm, L.L.C. and Timothy G. Carroll's counsel and provided counsel with Plaintiff's Application for Temporary Restraining Order and Order thereon not less than two hours before such Application and Order are presented to the Court for determination."

_____
David J. Moraine
Attorney for Vibraderm, Inc.

*Received 4:85 pm*

# MARCHAND & MORAINE, L.L.P.

### ATTORNEYS AT LAW

Ten Thousand North Central Expressway
Suite 1043
Dallas, Texas  75231
Metro  214.378.1043
Telefax  214.378.6399

One Hundred Nine South Woodrow Lane
Suite 300
Denton, Texas  76205
Metro  940.243.2876
Telefax  940.384.1821

David V. Marchand
David J. Moraine

Toll Free  866.484.1043
http://www.marchandmoraine.com

Leanna Marchand, R.N., J.D.
Lori L. Moraine, R.N., J.D.

July 19, 2007

**VIA FACSIMILE @ 513-842-8826**

Mr. James Jansing
Counsel for Multiderm, L.L.C. and Timothy G. Carroll
One East Fourth Street Suite 1400
Cincinnati, OH 45202

Dear Mr. Jansing:

Our firm has been retained to represent Vibraderm, Inc. in relation to claims made against you, and your clients Timothy Carroll and Multiderm, L.L.C. for breach of fiduciary duty, aiding and abetting same, and related causes of action. Attached hereto please find Vibraderm's application for temporary restraining order that will be presented to the Court this afternoon.

Sincerely,

David J. Moraine

*Sent at
1:30 P.m.
Counsel until
until 3:30*



00279

| | | |
|---|---|---|
| Vibraderm, Inc. | § | IN THE DISTRICT COURT |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | OF DALLAS COUNTY, TEXAS |
| | § | |
| Multiderm, Inc., et. al. | § | |
| | § | |
| | § | |
| **Defendants.** | § | 160TH JUDICIAL DISTRICT |

## ORDER OF REFERRAL FOR MEDIATION

This case is appropriate for mediation pursuant to Texas Civil Practice & Remedies Code, §154.0001 et. Seq. **The parties shall mediate within fourteen (14) days or prior to any temporary injunction hearing in this case. Earle Hale, 214-515-0199,** is appointed Mediator. All counsel are directed to contact the mediator to arrange the logistics of mediation.

Mediation is a mandatory but non-binding settlement conference, conducted with the assistance of the mediator. Mediation is private, confidential and privileged from process and discovery. After mediation, the Court will be advised by the mediator, parties and counsel, only that the case did or did not settle. The mediator shall not be a witness nor may the mediator's records be subpoenaed or used as evidence. No subpoenas, citations, writs, or other process shall be served at or near the location of any mediation session, upon any person entering, leaving or attending any mediation session.

The mediator will negotiate a reasonable fee with the parties which shall be divided and borne equally by the parties unless agreed otherwise, paid by the parties directly to the mediator within a reasonable time and taxed as costs. If the parties do not agree upon the fee requested by the mediator, the Court will set a reasonable fee, which shall be taxed as costs. Each party and their counsel will be bound by the rules for mediation and shall complete the information forms as are furnished by the mediator.

Named parties shall be present during the entire mediation process, and each entity must be represented by individual(s) with full authority to negotiate settlement. Counsel and parties shall proceed in good faith to try to resolve this case and shall agree upon a mediation date. If no agreed date can be scheduled by counsel for the parties herein, then the mediator shall select a date and all parties shall appear as directed by the mediator. Failure or refusal to attend the mediation as scheduled may result in the imposition of sanctions, as permitted by law, which may include dismissal or default judgment. Referral to mediation is neither a substitute for trial, and the case will be tried if not settled. *Plaintiff's consel shall provide a copy of this order to all parties as soon as poss-ble.*

A report regarding the outcome of the mediation is to be mailed by the mediator to the Court, with a copy to the ADR Coordinator, immediately after the mediation.

SIGNED this _19_ day of _July_, 2007.

_Jim Jordan_

JIM JORDAN
JUDGE, 160th DISTRICT COURT
DALLAS COUNTY, TEXAS

cc:    All Counsel of Record
       Mediator



00280

CAUSE NUMBER 07-07319

| | | |
|---|---|---|
| VIBRADERM, INC. | § | IN THE DISTRICT COURT |
| PLAINTIFF | § | |
| | § | |
| V. | § | |
| | § | |
| | § | |
| MULTIDERM, L.L.C. SUCCESSOR TO | § | |
| MULTIDERM, INC., TIMOTHY G. CARROLL | § | 160th JUDICIAL DISTRICT |
| INDIVIDUALLY AND AS AGENT FOR | § | |
| MULTIDERM, INC. AND MULTIDERM, | § | |
| L.L.C.; JAMES JANSING, INDIVIDUALLY | § | |
| AND AS AGENT FOR MULTIDERM, L.L.C. | § | |
| DOES 1, AND 2 AS AGENTS FOR | § | |
| MULTIDERM, L.L.C.; AND DOES "X" | § | |
| INDIVIDUALLY AND AS AGENTS FOR | § | |
| MULTIDERM, L.L.C. | § | DALLAS |
| DEFENDANTS | § | ~~TARRANT~~ COUNTY, TEXAS |

## TEMPORARY RESTRAINING ORDER AND ORDER SETTING HEARING ON PLAINTIFF'S APPLICATION FOR A TEMPORARY INJUNCTION

Vibraderm, Inc., Plaintiff in this cause, has filed a verified petition for a temporary

injunction and, in connection therewith, has presented a request for a temporary restraining order,

as set forth in its petition. It clearly appears from the facts set forth in the petition and affidavit

that unless Timothy G. Carroll and Multiderm, L.L.C. are immediately restrained from

1. soliciting any persons or entities whose identities are contained on the compact disk removed by Carroll from the premises of Vibraderm, Inc. for sales, service, manufacture, or repair of microdermabrasion equipment;

2. using or attempting to use the trade secret information of Vibraderm for any purpose;

3. selling or offering for sale products incorporating the "patient specific paddle" design, which design is the property of Vibraderm;

4. ~~maintaining an internet website substantially similar to Vibraderm's proprietary design and coding;~~

1

5. ~~disparaging Vibraderm, its principals, agents, business, or products,~~

6. spending or disposing in any way of profits or proceeds arising from the sales of equipment and services of microdermabrasion equipment, ~~other than to deposit same into the registry of this Court to be held pending a final determination of the extent of the arising constructive trust.~~

~~It is essential that the court immediately and temporarily restrain the defendant from continuing with the conduct described in this petition. It is essential that the court act immediately,~~ they will commit the foregoing acts before notice can be given and a hearing is had on plaintiff's motion for a temporary injunction; and that if the commission of these acts is not restrained immediately, plaintiff will suffer irreparable injury because Vibraderm has and will continue to be damaged and injured by the defendants' conduct by loss of customers, loss of goodwill, confusion in the marketplace, and the loss of and permanent injury to the value of the trade secrets amassed by Vibraderm over the years, such as: the identity of Vibraderm's customers, the particular and peculiar business needs of each of these customers, Vibraderm's unique knowledge of the equipment owned by each customer, Vibraderm's unique methods of doing business, usurpation of Vibraderm's opportunities to develop relationships with physicians and others in the marketplace, and by promoting a version of Vibraderm's product that is technically unsound and inferior.

IT IS, THEREFORE, ORDERED that Multiderm, L.L.C. and Timothy G. Carroll, defendants in this cause, be, and hereby is, commanded forthwith to desist and refrain from

1. soliciting any persons or entities whose identities are contained on the compact disk removed by Carroll from the premises of Vibraderm, Inc. for sales, service, manufacture, or repair of microdermabrasion equipment;

2. using or attempting to use the trade secret information of Vibraderm for any purpose;

2

3.      selling or offering for sale products incorporating the "patient specific paddle" design, which design is the property of Vibraderm;

~~4.      maintaining an internet website substantially similar to Vibraderm's proprietary design and coding;~~

~~5.      disparaging Vibraderm, its principals, agents, business, or products;~~

6.      spending or disposing in any way of profits or proceeds arising from the sales of equipment and services of microdermabrasion equipment, ~~other than to deposit same into the registry of this Court to be held pending a final determination of the extent of the arising constructive trust.~~

from the date of entry of this order until and to the fourteenth day after entry or until further order of this Court.

IT IS FURTHER ORDERED that Multiderm, L.L.C. and Timothy G. Carroll, defendants appear before this Honorable Court on _August 2_ at _1: pm_ in the courtroom of the _160th_ District Court, Dallas County, Texas and then and there to show cause, if any there be, why a temporary injunction should not be issued as requested by plaintiff. The clerk of the court is hereby directed to issue a show cause notice to Multiderm, L.L.C. and Timothy G. Carroll to appear at the temporary injunction hearing.

The clerk of the above-entitled Court shall forthwith, on the filing by plaintiff of the bond hereinafter required, and on approving the same according to the law, issue a temporary restraining order in conformity with the law and the terms of this order.

This order shall not be effective unless and until plaintiff executes and files with the clerk a bond, in conformity with the law, in the amount of $ _5,000 00_ .

3

00283

SIGNED on July _19_, 2007 at _4:30 p. m._.

_____
JUDGE PRESIDING

4



**JRO**

# DALLAS COUNTY DISTRICT CLERK
## REGISTRY DEPOSIT INFORMATION SHEET

FILED

CASE # _____ 07-07319 _____

AMOUNT _____ Cash
CHECK # _____
AMOUNT _____
CHECK # _____
AMOUNT _____
CHECK # _____

CASE STYLE Vibraderm, Inc. vs Mutiderm, LLC, etal

NAME _____

TAX ID. # _____

MINORS NAME _____

MINORS SOCIAL SECURITY # _____

MINORS DATE OF BIRTH _____

NEXT FRIEND OR GUARDIAN'S NAME, ADDRESS & PHONE # _____

GUARDIAN AD LITEM'S NAME, ADDRESS & PHONE # _____

PLAINTIFF ATTY. David Moraine          DEFENDANT ATTY. _____
ADDRESS 10000 N. Central Ewy          ADDRESS _____
#1043
Dallas, TX. 75231
PHONE # 214-378-1043          PHONE # _____

ARE THESE FUNDS TO BE INVESTED?* YES___ NO___ _____ (SIGNATURE)
(A SIGNATURE MUST ACCOMPANY THIS ANSWER)

HAS AN ORDER BEEN SUBMITTED TO INVEST FUNDS  YES___ NO___ _____ (SIGNATURE)
(A SIGNATURE MUST ACCOMPANY THIS ANSWER)

IT IS THE RESPONSIBILITY OF THE ATTORNEY OF RECORD TO SUBMIT AN ORDER TO INVEST FUNDS.
PER RULE 26.1 OF THE APPELLATE PROCEDURE, NO MONIES WILL BE DISBURSED FROM THE REGISTRY ON ANY FINAL JUDGEMENTS UNTIL AFTER A 30 DAY WAITING PERIOD. THIS PERIOD STARTS FROM THE DAY THE FINAL JUDGEMENT WAS SIGNED BY THE JUDGE.

*A FEE OF 10% OF THE INTEREST EARNED WILL BE ASSESSED AT THE TIME OF WITHDRAWAL PER SECTION 117.054 OF THE LOCAL GOVERNMENT CODE. A FEE OF 5% NOT TO EXCEED $50.00 DOLLARS WILL BE ASSESSED AT THE TIME OF WITHDRAWAL OF FUNDS DEPOSITED IN THE REGISTRY THAT HAVE NOT EARNED INTEREST AS PER SECTION 117.055 OF THE LOCAL GOVERNMENT CODE. *

IT IS THE RESPONSIBILITY OF THE ATTORNEY OF RECORD TO REQUEST A REFUND OF ANY MONIES DEPOSITED IN LIEU OF BOND AND TIMELY NOTIFY THE TRUST DEPARTMENT OF ANY INVESTMENT OR WITHDRAWAL.

SIGNATURE _____ DATE 7/21/07
(DEPOSITOR)

DEPOSIT RECEIVED VIA MAIL, DATE RECEIVED _____

# REPRINTED RECEIPT

**DALLAS COUNTY OFFICIAL RECEIPT GARY FITZSIMMONS, DISTRICT CLERK**

Payor
MORAINE, DAVID J
10000 N CENTRAL EXPRESSWAY
SUITE 1043
DALLAS, TX 75231

Receipt No.
**40453-2007-DCLK**

Transaction Date
07/20/2007

| Description | Amount Paid |
|---|---|
| On Behalf Of  MULTIDERM LLC | |
| DC-07-07319 | |
| VIBRADERM INC vs. MULTIDERM LLC | |
| Bond Account | |
| CASH BOND DEPOSIT (CIVIL) | 5,000.00 |
| **SUBTOTAL** | **5,000.00** |

**PAYMENT TOTAL** | **5,000.00**

| | |
|---|---|
| CASH Tendered | 5,000.00 |
| Total Tendered | **5,000.00** |
| Change | 0.00 |

| 07/20/2007 | Cashier | Audit |
|---|---|---|
| 04:23 PM | Station DC5 | 42475660 |

# REPRINTED RECEIPT



CAUSE NUMBER DC- 07-07319

| | | |
|---|---|---|
| VIBRADERM, INC.<br>PLAINTIFF | § § § | IN THE DISTRICT COURT |
| V. | § § § | |
| MULTIDERM, L.L.C. SUCCESSOR TO<br>MULTIDERM, INC., TIMOTHY G. CARROLL<br>INDIVIDUALLY AND AS AGENT FOR<br>MULTIDERM, INC. AND MULTIDERM,<br>L.L.C.; JAMES JANSING, INDIVIDUALLY<br>AND AS AGENT FOR MULTIDERM, L.L.C.<br>DOES 1, AND 2 AS AGENTS FOR<br>MULTIDERM, L.L.C.; AND DOES "X"<br>INDIVIDUALLY AND AS AGENTS FOR<br>MULTIDERM, L.L.C.<br>DEFENDANTS | § § § § § § § § § § § § | 160th JUDICIAL DISTRICT<br><br><br><br>DALLAS<br>COUNTY, TEXAS |

## AMENDED CERTIFICATE OF COMPLIANCE ON REQUEST FOR EX PARTE RELIEF

"I hereby certify that in conformance with Dallas County Local Rule 2.02 I notified Multiderm, L.L.C. and Timothy G. Carroll's counsel and provided counsel with Plaintiff's Application for Temporary Restraining Order and Order thereon not less than two hours before such Application and Order are presented to the Court for determination. A copy of the facsimile confirmation page is attached hereto as Exhibits 1 and 2."

David J. Moraine
Attorney for Vibraderm, Inc.

```
*************************
***    TX REPORT    ***
*************************


TRANSMISSION OK

TX/RX NO            0888
CONNECTION TEL                 915138428826
CONNECTION ID
ST. TIME           07/19 12:27
USAGE T            13'37
PGS. SENT            32
RESULT             OK
```

# MARCHAND & MORAINE, L.L.P.

### ATTORNEYS AT LAW

Ten Thousand North Central Expressway
Suite 1043
Dallas, Texas 75231
Metro  214.378.1043
Telefax 214.378.6399

One Hundred Nine South Woodrow Lane
Suite 300
Denton, Texas 76205
Metro  940.243.2876
Telefax  940.384.1821

David V. Marchand
David J. Moraine

Toll Free  866.484.1043
http://www.marchandmoraine.com

Leanna Marchand, R.N., J.D.
Lori L. Moraine, R.N., J.D.

July 19, 2007

**VIA FACSIMILE @ 513-842-8826**

Mr. James Jansing
Counsel for Multiderm, L.L.C. and Timothy G. Carroll
One East Fourth Street Suite 1400
Cincinnati, OH 45202

Dear Mr. Jansing:

Our firm has been retained to represent Vibraderm, Inc. in relation to claims made against you, and your clients Timothy Carroll and Multiderm, L.L.C. for breach of fiduciary duty, aiding and abetting same, and related causes of action. Attached hereto please find Vibraderm's application for temporary restraining order that will be presented to the Court this afternoon.

Sincerely,

David J. Moraine

```
***********************
***   TX REPORT   ***
***********************

TRANSMISSION OK

TX/RX NO              0889
CONNECTION TEL                915138428826
CONNECTION ID
ST. TIME             07/19 12:41
USAGE T              01'35
PGS. SENT            4
RESULT               OK
```

CAUSE NUMBER _____

| | | |
|---|---|---|
| VIBRADERM, INC. | § | IN THE DISTRICT COURT |
|     PLAINTIFF | § | |
| | § | |
| V. | § | |
| | § | |
| | § | |
| MULTIDERM, L.L.C. SUCCESSOR TO | § | |
| MULTIDERM, L.L.C., TIMOTHY G. CARROLL | § | _____ JUDICIAL DISTRICT |
| INDIVIDUALLY AND AS AGENT FOR | § | |
| MULTIDERM, INC. AND MULTIDERM, | § | |
| L.L.C.; JAMES JANSING, INDIVIDUALLY | § | |
| AND AS AGENT FOR MULTIDERM, L.L.C. | § | |
| DOES 1, AND 2 AS AGENTS FOR | § | |
| MULTIDERM, L.L.C.; AND DOES "X" | § | |
| INDIVIDUALLY AND AS AGENTS FOR | § | |
| MULTIDERM, L.L.C. | § | |
|     DEFENDANTS | § | TARRANT COUNTY, TEXAS |

### TEMPORARY RESTRAINING ORDER AND ORDER SETTING HEARING ON PLAINTIFF'S APPLICATION FOR A TEMPORARY INJUNCTION

Vibraderm, Inc., Plaintiff in this cause, has filed a verified petition for a temporary injunction and, in connection therewith, has presented a request for a temporary restraining order, as set forth in its petition. It clearly appears from the facts set forth in the petition and affidavit that unless Timothy G. Carroll and Multiderm, L.L.C. are immediately restrained from

1.    soliciting any persons or entities whose identities are contained on the compact disk removed by Carroll from the premises of Vibraderm, Inc. for sales, service, manufacture, or repair of microdermabrasion equipment;

2.    using or attempting to use the trade secret information of Vibraderm for



CAUSE NUMBER DC-07-07319

| | | |
|---|---|---|
| VIBRADERM, INC. | § | IN THE DISTRICT COURT |
|     PLAINTIFF | § | |
| | § | |
| V. | § | |
| | § | |
| | § | |
| MULTIDERM, L.L.C. SUCCESSOR TO | § | |
| MULTIDERM, INC., TIMOTHY G. | § | |
| CARROLL, INDIVIDUALLY AND AS AGENT | § | 160th JUDICIAL DISTRICT |
| FOR MULTIDERM, INC. AND MULTIDERM, | § | |
| L.L.C.; JAMES JANSING, INDIVIDUALLY | § | |
| AND AS AGENT FOR MULTIDERM, L.L.C. | § | |
| DOES 1, AND 2 AS AGENTS FOR | § | |
| MULTIDERM, L.L.C.; AND DOES "X" | § | |
| INDIVIDUALLY AND AS AGENTS FOR | § | |
| MULTIDERM, L.L.C. | § | |
|     DEFENDANTS | § | DALLAS COUNTY, TEXAS |

## PLAINTIFF'S FIRST AMENDED PETITION

TO THE HONORABLE COURT:

    Vibraderm, Inc. the plaintiff, complains of Timothy G. Carroll, Multiderm, L.L.C., James

Lansing, and Does 1, 2, and X, defendants, and for cause of action shows:

### SUMMARY OF INJUNCTIVE RELIEF SOUGHT:

    Plaintiff Vibraderm, Inc. seeks injunctive relief prohibiting the further use and
dissemination of Vibraderm's trade secret information, including Vibraderm's confidential
customer and contacts list, marketing plan, research and development information, and
business model; and the disparagement of Vibraderm by and through the Defendants.
The trade secrets were covertly acquired by Defendant Carroll while a director and
fiduciary of Vibraderm. Carroll stole the information by becoming a director under a
plan of economic espionage, wrongfully smuggling the information from the Vibraderm
corporate offices and starting Vibraderm's sole competitor in the narrow
vibradermabrasion market. The use of the stolen trade secrets is ongoing and
continuous and causes injury for which there is no adequate remedy at law, including
instant and ongoing solicitation of Vibraderm's customers, and confusion in the
marketplace caused by the Defendants' actions, disparagement of Vibraderm's business
reputation and products, and misuse of Vibraderm's confidential trade secrets.

1.      Selection of Discovery Level

Discovery is to be conducted pursuant to a Level 2 Discovery control plan in accordance with the Texas rules of civil procedure.

2.      Party and Service Instructions

a.      Vibraderm, Inc. (Vibraderm) is the Plaintiff, and is a Texas corporation with its principal place of business in this state, and who appears by and through its attorney, David J. Moraine, Marchand & Moraine, L.L.P., 109 South Woodrow Lane, Suite 300, Denton, Texas 76205.

b.      Timothy G. Carroll (Carroll) is an individual residing in Ohio. At all times relevant, Carroll was acting as an agent of and vice-principal of Multiderm, L.L.C. and Multiderm, Inc., its successor in interest, in that he was a corporate officer, was a person to whom the company delegated authority to employ, direct, and discharge servants, was a person engaged in the performance of nondelegable duties of the company, and was a person to whom the company confided the management of the whole or a department or division of the business. Service may be at 3116-C West Montgomery Road, Suite 256, Maineville, Ohio 45039.

c.      Co-defendant Multiderm, L.L.C. (Multiderm) is the successor in interest to Multiderm, Inc., and is an Ohio limited liability company that may be served by and through its registered agent for service of process KMK Service Corporation, One East Fourth Street, Suite 1400, Cincinnati, Ohio 45202.

d.      On information, Co-defendant James Jansing is an Ohio resident and served as the incorporator and initial manager of Multiderm, L.L.C. See Exhibit A. At all times relevant, Jansing was acting as an agent of and vice-principal of Multiderm in that he was a corporate officer, was a person to whom the company delegated authority to employ, direct, and discharge

servants, was a person engaged in the performance of nondelegable duties of the company, and was a person to whom the company confided the management of the whole or a department or division of the business.  Service may be had at the office of Keating, Muething & Klekamp PLL, One East Fourth Street, Suite 1400, Cincinnati, Ohio 45202.

e.    Co-defendants Does A and B are agents of defendant Multiderm, L.L.C. and at all times relevant herein were acting within the course and scope of their agency.  The identity of such Does will be supplemented following appropriate discovery.

f.    Co-defendants Does X are persons or entities acquiring any object, material, device, or or any copy thereof, including a writing, recording, drawing, sample, prototype, model, or photograph, or the whole or any part of any scientific or technical instrument, information, design, process, procedure, or improvement that constitutes trade secret property of Vibraderm, and who to a patient or other customer communicated or communicates or transmitted or transmits same or a copy of same, in violation of Vibraderm's rights pursuant to the Texas Theft Liability Act.  The identity of such Does will be supplemented following appropriate discovery.  Such Does may include Midwest Medical, Inc.,  Multiderm's distributors, and physician resellers who acquired the trade secrets of Vibraderm through the actions of the defendants and used, sold or transmitted same in violation of Vibraderm's rights.

3.    Jurisdiction and Venue

a.    Texas has jurisdiction over the parties to this suit.  Carroll is a non-resident who is subject to long-arm jurisdiction because he contracted by mail or otherwise with a Texas resident and either party was to perform the contract in whole or in part in this state; he committed a tort in whole or in part in this state; and he recruited Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.  Carroll further

purposefully availed himself of the benefits and protections of the judicial system in this state by filing and prosecuting suit against Vibraderm in this state.

b.      Multiderm is a non-resident limited liability company chartered in Ohio, that is subject to long-arm jurisdiction because it committed a tort in whole or in part in this state; and recruited Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

c.      Jansing is a non-resident who on information and belief is subject to long-arm jurisdiction because he aided and abetted the commission of a tort in whole or in part in this state.

d.      The Doe defendants are residents of Texas and other states and are subject to long-arm jurisdiction because each committed or aided and abetted the commission of a tort in whole or in part in this state.

e.      This Court has jurisdiction over the parties because each purposefully availed themselves of the privilege of conducting activities in the state of Texas and established minimum contacts sufficient to confer jurisdiction over said Defendants, and the assumption of jurisdiction over said Defendants will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

f.      Venue is proper in Dallas County, Texas pursuant to the general venue statute because all or a substantial part of the events or omissions giving rise to the claim occurred in Dallas County, Texas.  Venue is further proper in Dallas County, Texas pursuant to C.P.R.C. §15.093 because the injuries complained of were inflicted in Dallas County.  Venue is further proper pursuant to C.P.R.C. §15.088 because suit is brought against a nonresident of this State and Plaintiff's principal place of business is Dallas County, Texas.

4.     Facts

a.     Vibraderm is a Texas corporation doing business globally as a leader in the industry of cosmetic skin resurfacing.  Vibraderm's products and proprietary technology are at the cutting edge of medical technology, and the company has invested millions of dollars of resources into researching, developing, designing, and acquiring rights to use such technology. Few companies are in existence in the market in which Vibraderm conducts its principal business, largely due to high start-up costs associated with the design and employment of appropriate technology, and closely guarded private information for clients and contacts in the industry.  Vibraderm's products are supported by over six years of intensive research and development, and its products are currently in their twenty-fifth generation, making Vibraderm's products the industry leader in quality and reputation.

b.     The cosmetic skin resurfacing industry is a relatively young industry, and Vibraderm is widely recognized as the leader in new and emerging vibradermabrasion techniques and equipment alternatives.  A unique aspect of Vibraderm's business model is that each patient purchases a paddle kit.  These paddles are personal to the patient, and vibrate at an intense frequency, assisting in the exfoliating process and causing the rapid infusion of treatment chemicals into the skin.  Vibraderm's paddle technology provides it a competitive edge in the industry.  Because Vibraderm's products operate at a unusually high degree of mechanical and electrical precision, few manufacturers in the world are capable of producing the Vibraderm paddles and handsets to Vibraderm specifications.  Prior to the events leading to this suit, Vibraderm was the only company employing the use of such patient-specific paddles.

c.     In late 2004 Carroll, the president of an ailing medical supply company, Mid-West Medical, Inc. (Mid-West) became aware of Vibraderm and expressed a desire to invest in the

company.  As part of the transaction, Mid-West became a distributor for Vibraderm products and began to sell approximately five units per month, with an average revenue of sixteen thousand five hundred thousand dollars per unit.  Carroll acquired the shares in Vibraderm, and was installed as a director.

       d.     After Carroll became a director, he began to engage in activities which at the time, were not known by Vibraderm to be improper, but in reality constituted the first steps to Carroll's plan of economic espionage.  A portion of Vibraderm's confidential business information is maintained in secure off-site electronic storage.  Vibraderm pays monthly fees to ensure the protection of its business information, and to guard against unauthorized access.  After becoming an director, Vibraderm has learned that Carroll contacted the off-site storage provider covertly to attempt to acquire the information, and was refused access by the security provider.  Shortly thereafter, in or about June 2006, Carroll began to demand that the corporation provide him with certain business information, including allowing him to personally visit corporate headquarters, and review all company sales documents, manufacturing and licensing agreements, customer lists, sales contacts, and other business records of the corporation.  Because the level of detail of information requested was suspicious, corporate counsel was engaged to request that Carroll designate a proper shareholder purpose for the requests.  Defendant Jansing was serving as Carroll's attorney while Carroll was a board member of Vibraderm, Inc.  Jansing knew or should have known that Carroll owed Vibraderm a fiduciary duty.  Jansing knew that Carroll intended to acquire the confidential business information of Vibraderm for the purpose of unfair competition, and aided and abetted Carroll in the breach of Carroll's fiduciary duty by incorporating and serving as the initial manager of Multiderm, Inc. and Multiderm, L.L.C., and counseling Carroll, all such services designed to further Carroll's fraud and provide the manner and means for

Carroll's unlawful activities.  On Jansing's advice, Carroll  refused to state his purpose in requesting copies of the information.

e.       To guard against the potential for improper dissemination, but to accommodate Carroll's request as a director, an agreement was made wherein the company caused to be copied to compact disk, the information Carroll was seeking, with the stipulation that Carroll could inspect the information, but he was not permitted to leave the Vibraderm offices with the information, which constituted the current books and records of the business, customer lists, vendor and supplier lists, manufacturing contacts, and other proprietary information.  Carroll used the disk at the office, but then covertly left the office with the disk and Vibraderm's confidential trade secret information.

f.       As soon as Carroll acquired the proprietary business information of Vibraderm, Mid-West's sales of Vibraderm's equipment ceased without explanation.  Carroll then used the improperly acquired trade secrets of Vibraderm to establish a competing entity, and in concert with the management of that entity, steal Vibraderm's business model and use its trade secrets to the prejudice of Vibraderm.  All of these actions occurred while Carroll was a director of Vibraderm.

g.       Thereafter, in or about September 2006, Carroll made demand for the redemption of his shares for the sum of $300,000.  In October 2006 Carroll signed a written affidavit acknowledging that the materials he appropriated on the compact disk were trade secrets, and further warranting that he had either returned or destroyed all confidential company information. Carroll further expressly warranted that he would not use company trade secrets in competition with Vibraderm.  Carroll's statements were designed to fraudulently conceal the fact that Carroll had acquired copied and was actually in the process of secretly competing with Vibraderm.

h.      Carroll then began a campaign to disparage Vibraderm, which included filing suit against the company, and authoring and delivering to the company's customers, suppliers, and business affiliates a variety of "press releases" in which Carroll stated that the company was being mismanaged, and was financially unstable.   The releases were delivered to the customers off the client list Carroll had acquired on the compact disk.  The statements by Carroll were false, and groundless, and were designed to allow Carroll's new secret company, Multiderm, to tortiously acquire the business opportunities of Vibraderm.  Multiderm and its agents began to call on the Vibraderm customers that received the false "press releases."  Carroll, while a director of Vibraderm, did not reveal that he had formed Multiderm, that he had misappropriated the confidential trade secrets of Vibraderm, or that he was competing with Vibraderm.  This pattern of disparagement to Vibraderm customers continues to this date, where Carroll has made defamatory representations to Vibraderm customers in Dallas, Texas, on internet blogs, and other fora.

i.      Carroll conspired with Jansing to form Multiderm, Inc. in October 2006, installing Jansing as manager and tendering to Multiderm, Vibraderm's trade secrets.  When Carroll realized director information would be reported in public records, thus exposing his role in the competing enterprise, Carroll and Jansing conspired to conceal the existence of the ownership of Carroll's competition through Multiderm from the public record, and converted the entity to a limited liability company in December 2006, disclosing only Jansing as the manager of same.

j.      Multiderm, Carroll,  Jansing, and those aiding and abetting them hired manufacturers to manufacture clone products with substantially inferior parts; acquired from Vibraderm contractors patient paddles; and from Russ McKee, a Vibraderm contractor, a Vibraderm handset, for the purpose of reverse engineering the handset and repackaging

Vibraderm parts and selling them as Multiderm equipment.  Multiderm further obtained a Small

Business Administration Loan in February 2007 as a "going concern."  Carroll's actions extended

beyond merely preparing to compete.  These acts were all fraudulently concealed from

Vibraderm through the artifice employed by Carroll as well as Carroll's false statements that he

would not use the trade secret information of Vibraderm to compete with Vibraderm, or for the

benefit of Multiderm.

   k.      Carroll's shares were redeemed by the corporation on or about March 2007, and

the redemption suit was dismissed with prejudice in May 2007.  Contrary to Carroll's statements

under oath, Carroll and those acting in concert with him continue to take tortious actions to

misappropriate the trade secrets of Vibraderm, and now, post-settlement, continues to use same

for the benefit of Multiderm.  Among other actions, Carroll used the data removed from

company computers including customer lists, web page design materials, product designs,

supplier lists, supplier agreements, lists of sales persons, manufacturing contacts, schematics,

specifications, and other data.  Multiderm established a website based on the hypertext markup

language, code, and design of Vibraderm's website.  It copied Vibraderm's promotional materials.

It marketed its products as "identical" to Vibraderm's products "only cheaper."  Based on the

stolen research, development and manufacturing data Carroll stole, it commissioned a factory to

cosmetically duplicate Vibraderm's products, using inferior electronics.  Carroll, and the

defendants in this case, took these actions to appropriate Vibraderm's trade secrets including its

business model and "playbook" on behalf of and for the use of Multiderm.

   l.      The defendants further continued to solicit Vibraderm agents and contractors, and

contacted physicians, suppliers, and customers to disparage the business of Vibraderm to obtain

sales for Multiderm.  In so doing, Carroll, individually and on behalf of Multiderm appropriated

trade secrets and interfered wrongfully with existing and prospective contractual relationships between Vibraderm and its customers, suppliers, and physician sponsors. All of the information appropriated by Carroll was treated by Vibraderm as confidential and could not be acquired in any other way than by years of experience in Vibraderm's business and the expenditure of millions of dollars in research, development, and testing.

l.      Since the date of redemption of Carroll's shares in Vibraderm, Carroll by and through his representatives and the representatives of Multiderm has represented to physicians, distributors, and customers that Vibraderm is going out of business, and the customers could buy the identical equipment from Multiderm for a cheaper price. In furtherance and in evidence of Carroll's intent to compete with Vibraderm using Vibraderm's trade secrets, in April 2007, Carroll purchased and staffed a booth at the American Academy of Anti-Aging Medicine, where he utilized trade show exhibits and equipment to market Multiderm's products that were based on Vibraderm's trade secrets. The defendants' use of Vibraderm's trade secrets is not only probable or inevitable, it is actual.

m.      Each of the foregoing acts and omissions are incorporated into the following paragraphs as if set forth therein in their entirety. In doing the acts and omissions alleged in this petition, the defendants acted in concert, aided and abetted one another, and conspired to commit the torts alleged herein. Each of the defendants aiding and abetting Carroll in his breaches of fiduciary duty are independently liable for actual and exemplary damages because a party who aids and abets the breach of a fiduciary is liable to the same extent as the fiduciary. Toles v. Toles, 113 S.W.3d 899 (Tex. App. --Dallas 2003). "It is settled as the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such." Kinzbach Tool Co. v. Corbett-Wallace

Corp., 138 Tex. 565, 160 S.W.2d 509, 514 (1942);  Kline v. O'Quinn, 874 S.W.2d 776, 786 (Tex.

App.--Houston [14th Dist.] 1994, writ denied); Horton v. Robinson, 776 S.W.2d 260, 266 (Tex.

App. --El Paso 1989, no writ);  Herider Farms-El Paso, Inc. v. Criswell, 519 S.W.2d 473, 477

(Tex. App.--El Paso 1975, writ ref'd n.r.e.).

5.    Misappropriation of Trade Secrets

   a.    In doing the acts alleged, Carroll breached his fiduciary duty to Vibraderm, and in

breach of such confidential relationship, and through improper conduct, Carroll discovered and

appropriated Vibraderm's trade secrets, and used same for the benefit of Carroll, Midwest

Medical,  and Multiderm, causing Vibraderm damages in an amount in excess of minimum

jurisdictional limits of this Court.

   b.    The secrets appropriated by Carroll were patterns, devices, customer lists,

marketing information, and other compilations of information used in Vibraderm's business such

as pricing information, client information, customer preferences, buyer contacts, market

strategies, blueprints, and drawings.  The information stolen is such information that gives

Vibraderm an opportunity to obtain an advantage over competitors who do not know or use it.

As the result of Carroll's conduct, Vibraderm "finds itself in the position of a coach, one of

whose players has left, playbook in hand, to join the opposing team before the big game."

PepsiCo, Inc. v. Redmond, 54 F.3d 1262 (7th Cir. 1995).

   c.    The information stolen by Carroll is information that was not generally known

outside the business; and was made available only to officers and directors in Vibraderm.  It is

telling that prior to Carroll's involvement with Vibraderm, neither Carroll nor Midwest Medical

was involved in the cosmetic vibradermabrasion industry.  After Carroll became an officer and

director, and appropriated Vibraderm's trade secrets, Carroll's new company Multiderm became

the only competitor of Vibraderm to employ the same paddle design as Vibraderm.

d.      The information stolen by Carroll is the information comprising the very heart of the Vibraderm's business model, and was developed over years through significant investment of effort and money.  The information could not be properly acquired or duplicated by others without similar investment, effort, and expense.  Carroll used that information to avoid normal costs of entry into the market, and to hijack and appropriate Vibraderm's business.

e.      Vibraderm sues for the protection of its trade secrets, and seeks money damages at law, the imposition of a constructive trust and equitable lien at equity, and injunctive relief prohibiting defendants from making use of Vibraderm's trade secrets, or property derived from the wrongful use or appropriation of such secrets.

6.      Breach Of Fiduciary Duty and Constructive Fraud

a.      As a director agent of Vibraderm, Carroll owed a fiduciary duty to the corporation.

b.      Part of Carroll's duty includes a duty to refrain from using confidential or proprietary information acquired during the relationship in a manner adverse to the corporation. This obligation survives termination of the employment relationship, and continues through to the instant date.

c.      It is further established that "In Texas, courts condemn the employment of improper means to procure trade secrets."  American Precision Vibrator Co. v. National Air Vibrator Co., 764 S.W.2d 274 (Tex. App. --Houston [1st Dist.] 1988).

d.      In this case, Carroll breached his fiduciary duty to the corporation, and acquired its trade secrets for the purpose of competing with Vibraderm.  Carroll, in concert with others, took affirmative steps to conceal the fact that he was misappropriating and converting the trade

secrets of Vibraderm, and using the trade secrets of Vibraderm for the benefit of the defendants. Carroll, individually and in concert with others, in further violation of his fiduciary duty fraudulently and by means of deception concealed from Vibraderm, his activities, although he knew they were tortious.

e.      Carroll stole plans, customer lists, supplier lists, and business plans, and hired a manufacturer to duplicate Vibraderm's products for sale by the defendants pursuant to the stolen business plan.  Vibraderm shows that although Carroll owed a duty of loyalty and full disclosure, Carroll breached those duties and fraudulently concealed from Vibraderm his conduct and intentions.  Carroll's fraudulent concealment of his multiple violations of his fiduciary duty extends through to the instant date, and represents a current, ongoing, and continuous course of tortious conduct.  Carroll failed to deal with Vibraderm with the most abundant good faith, with absolute and perfect candor or openness and honesty, and with the absence of any concealment or deception.  Carroll's duty not to improperly utilize the trade secret of Vibraderm extends beyond the termination of his status of director, and Carroll remains under a fiduciary obligation to this date not to utilize the trade secret or confidential information of Vibraderm in competition with Vibraderm.

f.      Carroll's breach has caused Vibraderm substantial general, special, and economic damages in an amount in excess of the jurisdictional limits of this Court.  Further, the acts and omissions complained of herein, were fraudulent and criminal in nature and Vibraderm is entitled to recover exemplary damages pursuant to C.P.R.C. §41.003 and §41.005.  Accordingly, Vibraderm seeks exemplary damages in addition to all other damages alleged herein.

7.      Constructive Trust

a.      A constructive trust may be imposed on property obtained by fraud.  Thigpen v.

Locke, 6 Tex. Sup. Ct. J. 157, 363 S.W.2d 247, 250 (Tex. 1962).  Vibraderm further shows that because corporate directors owe a fiduciary duty to their corporation, a corporate fiduciary is under the obligation not to usurp corporate opportunities for personal gain. Under the corporate opportunity doctrine, the interest acquired by an officer or director is charged with a trust for the corporation's benefit, and a constructive trust is the proper remedial device to hold the fiduciary accountable.  International Bankers Life Ins. Co. v. Holloway, 6 Tex. Sup. Ct. J. 426, 368 S.W.2d 567, 577 (Tex. 1963).

b.      Multiderm and on information, Midwest Medical's vibradermabrasion business is to be built wholly on the trade secret information stolen from Vibraderm by Carroll.  The entities are in substance owned and controlled by Carroll and Jansing.  Because Carroll obtained and converted the information in constructive fraud, and in breach of his fiduciary obligations to Vibraderm, aided and abetted by the other defendants, Vibraderm requests that the Court disgorge the proceeds of such breach and impose a constructive trust over all proceeds arising as the result of the breach.  The imposition of such trust should include all of the profits, proceeds, and benefits of each defendant's sales of any Multiderm equipment, or any proceeds arising from such business.

c.      Vibraderm shows that Texas law provides for the imposition of such constructive trust over all profits, proceeds, and benefits flowing as a consequence of a breach of fiduciary duty.  See e.g. Kinzbach Tool Co. v. Corbett-Wallace Corp., 138 Tex. 565, 160 S.W.2d 509 (Tex. 1942).  Further, such remedy is consistent with the principles set forth in the RESTATEMENT OF RESTITUTION §§ 160, 190 (1937).

d.      Vibraderm prays for the imposition of such constructive trust, and for the imposition of an equitable lien over the trust property, together with any proceeds or property

acquired in whole or in part with such proceeds.  Vibraderm further requestst that the Court order

foreclosure of the equitable lien, and direct that all such property be sold to satisfy same.

8.      <u>Violations of Texas Theft Liability Act</u>

     a.      In doing the acts alleged herein, and in further breach of the fiduciary duties owed

to Vibraderm, the defendants made Vibraderm a victim of their criminal enterprise, to wit:

violations of the Economic Espionage Act of 1996, 18 U.S.C. §§1831-1832.

     b.      In doing the acts alleged in this petition, the defendants, with intent to convert a

trade secret, that is related to or included in a product that is produced for or placed in interstate

or foreign commerce, knowingly stole, or without authorization appropriated trade secrets

belonging to Vibraderm, and further without authorization copied, duplicated, downloaded,

transmitted, delivered, and conveyed such information.

     c.      Likewise the defendants received and possessed such information knowing the

same to have been stolen or appropriated, obtained, or converted without authorization, and

further  used, sold or transmitted same in violation of Vibraderm's rights.

     d.      In doing these acts, defendants violated the Texas Theft Liability Act, C.P.R.C.

§134.

     e.      Vibraderm prays for the recovery of its actual damages, statutory damages, and all

costs and attorneys fees pursuant to C.P.R.C. §134.005.

9.      <u>Tortious Interference With Actual and Prospective Contractual Relations</u>

     a.      For further cause of action, Vibraderm shows that within the past sixty days,

Grady Gibbs, and Russ McKee, "turn-coated" on Vibraderm and began acting as agents for

Multiderm contacted prospective clients of Vibraderm known by Multiderm to have entered into

agreements to purchase Vibraderm equipment on at least four occasions.  Further, on information

and belief McKee converted Vibraderm equipment for the purpose of making it available to Multiderm for reverse manufacturing.  As the Court recognized in <u>Centennial Mutual Life Association v. Parham</u>, 80 Tex. 518, 16 S.W. 316 (Tex. 1891) " When an agent, however, ceases to act for his principal in good faith and through collusion with another, desiring through him to cheat and defraud the principal, practically enters into the service of that other for the purpose of promoting the interest of that person, or the common interest of himself and that other, in fraud of his principal . . . the agent Pro hac vice becomes the agent of the person he collusively serves."

      b.      Each of the agents of Multiderm represented to Vibraderm's prospective clients that Vibraderm was financially insolvent and going out of business.  The statements made were false and defamatory statements, and were made by Multiderm's agents with the intent to prevent execution of the prospective contracts, and to disparage Vibraderm.  The statements were false and defamatory, and therefore independently tortious in nature.

      c.      As a direct and proximate cause of the acts of tortious interference, Vibraderm has sustained economic damages in excess of $100,000, and continues to suffer additional damages each additional day.

<u>10.    Request for Temporary Restraining Order and Injunction</u>

      a.      The protection of a trade secret is a well-recognized objective of equity.  <u>K & G Oil Tool & Service Co. v. G & G Fishing Tool Service</u>, 158 Tex. 594, 314 S.W.2d 782 (Tex. 1958).  This is because trade secrets are subject to protection under the equitable jurisdiction of state courts.  <u>Hyde Corp. v. Huffines</u>, 158 Tex. 566, 314 S.W.2d 763 (Tex. 1958).

      b.      In determining whether to grant trade secret protection through a temporary injunction, a trial court determines whether the applicant has established that the information is

entitled to trade secret protection pending the trial on the merits. IAC, Ltd. v. Bell Helicopter Textron, Inc., 160 S.W.3d 191, 197 (Tex. App. --Fort Worth 2005, no pet.).

      c.     Enjoining an agent or former agent from using an principal's confidential information is appropriate when it is probable that the former agent will use the confidential information for his benefit, or his new employer's benefit, or to the detriment of his former employer. Rugen v. Interactive Bus. Sys., Inc., 864 S.W.2d 548, 552 (Tex. App. --Dallas 1993, no writ) ("Rugen is in possession of IBS's confidential information and is in a position to use it. Under these circumstances, it is probable that Rugen will use the information for her benefit and to the detriment of IBS."); see also Williams v. Compressor Eng'g Corp., 704 S.W.2d 469, 470-72 (Tex. App. --Houston [14th Dist.] 1986, writ ref'd n.r.e.).

      d.     Vibraderm prays pursuant to Tex. Bus. & Com. Code § 16.29 and on equitable grounds for a temporary restraining order, temporary injunction, and after trial on the merits, a permanent injunction. Vibraderm shows that it is the owner of certain property or rights threatened with irreparable injury by the conduct of the defendants, their agents, and those acting in active concert with them.

      e.     In particular, Vibraderm is a business located in Tarrant County, Texas that, for over six years has manufactured and sold speciality medical devices in and around the North Texas area. During that time, Vibraderm has built up an extensive and confidential customer list, acquired unique skills and special knowledge of the equipment involved, manufacturing processes, marketing strategy, product design, and of customer needs, and has developed goodwill in the business community.

      f.     As set forth in the facts set out elsewhere in this petition, Carroll came into possession of Vibraderm's trade secrets through breaches of his fiduciary duty to Vibraderm, and

the remaining defendants aided and abetted Carroll in the use and dissemination of the secret information in violation of the duties owed by Carroll to Vibraderm.

g.      Carroll was trained by Vibraderm in the intricacies of the industry, and while the companies owned by Carroll were not in the cosmetic vibradermabrasion business prior to Carroll's involvement with Vibraderm, those companies entered that market after Carroll supplied them with Vibraderm's trade secrets, "playbook," and know-how.

h.      Carroll, in concert with the named defendants have threatened irreparable harm to Vibraderm's property and rights by starting a clone business, resigning from Vibraderm, selling Vibraderm paddles as their own, disparaging Vibraderm, actively soliciting Vibraderm's customers, contractors, and suppliers, disparaging Vibraderm, and offering those goods and services for sale in the narrow vibradermabrasion market, causing confusion in the marketplace. Further, the defendants have knowingly received trade secret property and knew or should have known that such property was stolen by Carroll.  The defendants have sold or resold such property, transmitted said property, and placed same in the stream of commerce in Texas and elsewhere.

i.      Carroll's conduct, and the conduct of the defendants is completely without right or entitlement in that such actions are in violation of the duties described in this petition, and such actions amount to the theft of Vibraderm's trade secrets.

j.      Vibraderm has and will continue to be damaged and injured by the defendants' conduct by loss of customers, loss of goodwill, confusion in the marketplace, and the loss of and permanent injury to the value of the trade secrets amassed by Vibraderm over the years, such as: the identity of Vibraderm's customers, the particular and peculiar business needs of each of these customers, Vibraderm's unique knowledge of the equipment owned by each customer,

Vibraderm's unique methods of doing business, usurpation of Vibraderm's opportunities to develop relationships with physicians and others in the marketplace, and by promoting a version of Vibraderm's product that is technically unsound and inferior, thus causing confusion in the marketplace.

k.      Vibraderm has no adequate remedy at law for the injuries just described. The injuries and losses are continuing. The property and rights involved are unique and irreplaceable, so that it will be impossible to accurately measure, in monetary terms, the damages caused by the defendants' conduct. The losses to the plaintiff from Carroll's conduct are likely to exceed the financial worth of Carroll and the entities made the subject of this suit, so as to prevent any adequate compensation to Vibraderm, even if money damages were a sufficient remedy.

l.      For the reasons stated in this pleading, Vibraderm requests that, after trial, this Court permanently enjoin the defendants Carroll and Multiderm, their agents, and those acting in active concert with them from:

        1.      soliciting any persons whose identities are contained on the stolen compact disk for sales, service, manufacture, or repair of vibradermabrasion equipment;

        2.      using or attempting to use the trade secret information of Vibraderm for any purpose;

        3.      selling or offering for sale products incorporating the "patient specific paddle" design, which design is the property of Vibraderm;

        4.      maintaining an internet website substantially similar to Vibraderm's proprietary design and coding;

    5.     disparaging Vibraderm, its principals, agents, business, or products;

    6.     spending or disposing in any way of profits or proceeds arising from the sales of equipment and services of vibradermabrasion equipment, other than to deposit same into the registry of this Court to be held pending a final determination of the extent of the arising constructive trust.

m.    It is essential that the court immediately and temporarily restrain the defendant from continuing with the conduct described in this petition. It is essential that the court act immediately, prior to notice on the defendant and a hearing on the matter, because defendants' conduct is active and ongoing, and Vibraderm continues to suffer daily losses as the result of defendants' active use. Defendants' continue to solicit Vibraderm's customers each day, and has told each of such customers so far, and will continue to tell each of Vibraderm's remaining customers, that Vibraderm has gone or is about to go out of business.

n.    In order to preserve the status quo and the property and rights of Vibraderm during the pendency of this action, defendants should be cited to appear and show cause why they should not be temporarily restrained, during the pendency of this action, from:

    1.     soliciting any persons whose identities are contained on the stolen compact disk for sales, service, manufacture, or repair of vibradermabrasion equipment;

    2.     using or attempting to use the trade secret information of Vibraderm for any purpose;

    3.     selling or offering for sale products incorporating the "patient specific paddle" design, which design is the property of Vibraderm;

    4.     maintaining an internet website substantially similar to Vibraderm's

proprietary design and coding;

5.      disparaging Vibraderm, its principals, agents, business, or products;

6.      spending or disposing in any way of profits or proceeds arising from the sales of equipment and services of vibradermabrasion equipment, other than to deposit same into the registry of this Court to be held pending a final determination of the extent of the arising constructive trust.

o.      For these reasons, Vibraderm requests that a temporary restraining order be issued without notice to defendants, restraining defendants, their agents, servants, and employees, from directly or indirectly:

1.      soliciting any persons whose identities are contained on the stolen compact disk for sales, service, manufacture, or repair of vibradermabrasion equipment;

2.      using or attempting to use the trade secret information of Vibraderm for any purpose;

3.      selling or offering for sale products incorporating the "patient specific paddle" design, which design is the property of Vibraderm;

4.      maintaining an internet website substantially similar to Vibraderm's proprietary design and coding;

5.      disparaging Vibraderm, its principals, agents, business, or products; until further order of this Court.

p.      Vibraderm further requests that a temporary injunction be issued, after notice to defendant and an evidentiary hearing, restraining defendants, their agents, servants, and employees, directly or indirectly from:

1.      soliciting any persons whose identities are contained on the stolen compact

disk for sales, service, manufacture, or repair of vibradermabrasion

equipment;

2.      using or attempting to use the trade secret information of Vibraderm for

any purpose;

3.      selling or offering for sale products incorporating the "patient specific

paddle" design, which design is the property of Vibraderm;

4.      maintaining an internet website substantially similar to Vibraderm's

proprietary design and coding;

5.      disparaging Vibraderm, its principals, agents, business, or products;

6.      spending or disposing in any way of profits or proceeds arising from the

sales of equipment and services of vibradermabrasion equipment, other

than to deposit same into the registry of this Court to be held pending a

final determination of the extent of the arising constructive trust;

during the pendency of this action.

q.      Vibraderm further requests that a permanent injunction be issued, on final trial of

this cause, enjoining defendants, their agents, servants, and employees, directly or indirectly

from

1.      soliciting any persons whose identities are contained on the stolen compact

disk for sales, service, manufacture, or repair of vibradermabrasion

equipment;

2.      using or attempting to use the trade secret information of Vibraderm for

any purpose;

3.      selling or offering for sale products incorporating the "patient specific paddle" design, which design is the property of Vibraderm;

4.      maintaining an internet website substantially similar to Vibraderm's proprietary design and coding;

5.      disparaging Vibraderm, its principals, agents, business, or products; for all time.

r.      Vibraderm prays that the Court set the bond for the temporary restraining order at $100.

PRAYER:

1.      WHEREFORE, PREMISES CONSIDERED, VIBRADERM prays :

a.      That defendants be cited to appear and answer;

b.      For damages within the jurisdictional limits of the Court;

c.      Exemplary damages;

d.      Injunctive relief as set forth in the body of this petition;

e.      Costs of suit including reasonable attorney's fees;

f.      Such other and further relief to which Vibraderm may be justly entitled including but not limited to pre-judgment and post-judgment interest as allowed by law.

Respectfully submitted,
MARCHAND & MORAINE, L.L.P.


by:_____
DAVID J. MORAINE
TEXAS BAR NUMBER 00795830
One Hundred Nine South Woodrow Lane
Suite 300

Denton, Texas 76205
(940) 243-2876
(940) 384-1821 FAX
ATTORNEY IN CHARGE

GARY LEE HACH
THE HACH LAW OFFICES
312 West Northwest Highway, Suite B
Grapevine, Texas 76051
(817) 421-3600
(817) 421-3680 FAX

ATTORNEYS FOR VIBRADERM

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Plaintiff's First Amended Petition has on this date been served by Certified Mail, Return Receipt Requested on each party's counsel of record by serving Timothy Carroll at 3116-C West Montgomery Road, Suite 256, Maineville, Ohio 45039; James Jansing and Multiderm, L.L.C. by and through their attorney Patrick Fisher at Keating, Muething & Klekamp PLL, One East Fourth Street, Suite 1400, Cincinnati, Ohio 45202.

_____
David J. Moraine

# MARCHAND & MORAINE, L.L.P.

### ATTORNEYS AT LAW

| | |
|---|---|
| Ten Thousand North Central Expressway<br>Suite 1043<br>Dallas, Texas 75231<br>Metro 214.378.1043<br>Telefax 214.378.6399 | One Hundred Nine South Woodrow Lane<br>Suite 300<br>Denton, Texas 76205<br>Metro 940.243.2876<br>Telefax 940.384.1821 |

Toll Free 866.484.1043
http://www.marchandmoraine.com

David V. Marchand
Leanna Marchand, R.N., J.D.
David J. Moraine
Lori L. Moraine, R.N., J.D.

Pamela A. Cherry
Jeff Hines

## FACSIMILE MESSAGE

**DATE:**    July 23, 2007        **PAGES (including cover sheet):** <u>11</u>

**TO:**    John Rivas
        RIVAS GOLDSTEIN, L.L.P.
        512/481-0022

**FROM:**    David Marchand

**RE:**    RE:  Cause No. 03-09018-C, 68th District Court, Dallas County, Texas
        *Mary L. Tyson, Individually, and as Representative of The Estate of William*
        *Tyson, Deceased, and Julie Rawls v. Long Term Care of Texas, Inc., d/b/a*
        *Twin Pines of Carrollton*

**MESSAGE OR DESCRIPTION:**    Transmitting file-marked copy of Agreed
Motion for Continuance.

The enclosed material is intended only for the recipient named above and unless otherwise expressly indicated is confidential and privileged information. Any dissemination, distribution, or copying of the enclosed material, other than is intended is prohibited.  If you have received this material in error, please notify us immediately by telephone, at our expense and destroy the enclosed material.  Your cooperation is appreciated.
Unless otherwise indicated, the original hard copy of this facsimile transmission will <u>not</u> be sent.

PLEASE NOTIFY IMMEDIATELY IF NOT PROPERLY RECEIVED:  ERIN TATE



EXHIBIT

A

1 of 1 DOCUMENT

THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY

CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE ISSUING GOVERNMENT AGENCY

OHIO SECRETARY OF STATE

**Company Name:** MULTIDERM LLC

**Type:** DOMESTIC LIMITED LIABILITY COMPANY (ORIGINALLY CORPORATION FOR PROFIT)

**Status:** IN GOOD STANDING

**Status Date:** 12/6/2006

**Filing Date:** 10/13/2006

**Business Description:** CVL

**Registered Agent:**
KMK SERVICE CORP.
Status: ACTIVE
Creation Date: 12/6/2006
AGENT ID: 200634002112

**Registered Office:**
STE. 1400
ONE EAST FOURTH STREET
CINCINNATI, OH 45202

**Members, Managers, Partners:**
JAMES M. JANSING

**Prior Names:**
MULTIDERM, INC.
Inactive Date: 12/6/2006

**Additional Information:** DID NOT RECEIVE CONSENT TO USE PROTECTED NAME

**Filing Number:** 1654041

**Internal Number:** 200628601816

**History:**
File Date: 12/6/2006
Type: CVS
Document Number: 200634002112


File Date: 10/13/2006
Type: DOMESTIC ARTICLES/FOR PROFIT